Argued and submitted June 10, 1992, resubmitted In Banc June 9, remanded in part with instructions; otherwise affirmed July 18, reconsideration denied November 10, 1993, petition for review allowed February 1, 1994 (318 Or 350)

In the Matter of the Suspension of
the Driving Privileges of

Maurice Gene OWENS, Jr.,
*Respondent,*

*v.*

MOTOR VEHICLES DIVISION,
*Appellant.*

(CC91-25; CA A71116)

857 P2d 144

Ann Kelley, Assistant Attorney General, Salem, argued the cause for appellant. With her on the brief were Dave Frohnmayer, Attorney General, and Virginia L. Linder, Solicitor General, Salem.

Steven L. Price, Hillsboro, argued the cause and filed the brief for respondent.

De MUNIZ, J.

Leeson, J., dissenting.

## De MUNIZ, J.

The Motor Vehicle Division (MVD) appeals a circuit court judgment that reversed the hearings officer's order suspending petitioner's license. The issue is whether the accuracy and precision of breath testing equipment are issues that a driver may raise in a license suspension hearing under ORS 813.410(5)(c). We conclude that they are and that the hearings officer erred by refusing to admit relevant evidence that petitioner attempted to present on those subjects. Accordingly, we remand to MVD for reconsideration.

The facts are not in dispute. On March 12, 1991, petitioner was driving a commercial vehicle when Officer Bowlds stopped him for speeding. Bowlds smelled a "very strong" odor of alcohol on petitioner's breath. He gave petitioner *"Miranda"* warnings and asked if he had been drinking. Petitioner indicated that he had shared a pitcher of beer about two hours earlier. Bowlds asked petitioner to perform some field sobriety tests. Petitioner took the tests and performed poorly on them. Bowlds arrested him for DUII and took him to the Wasco County jail. Bowlds then informed petitioner of his rights regarding the breath test and the consequences of refusing to take one. *See* ORS 813.100 and ORS 813.130. Petitioner took the breath test, and the Intoxilyzer displayed a result of 0.04%.

Petitioner timely requested an MVD hearing to avert the possibility of having his commercial driver's license suspended.[1] Petitioner called Bigelow, a microbiologist, as an expert witness at the hearing. Bigelow's background included training in the calibration and use of Intoxilyzer breath testing machines. Bigelow testified that the LED[2] readout on the Intoxilyzer displays three digits. That testimony was

---

[1] ORS 813.410(2) provides, in part:

"If [MVD] receives from a police officer a report pursuant to ORS 813.120 that discloses that the person was driving a commercial motor vehicle * * * submitted to [a breath] test and the person's blood, as shown by the test, had .04 percent or more by weight of alcohol, [MVD] shall suspend the person's commercial driver license on the 30th day after the date of arrest unless, at a hearing described under this section, the division determines that the suspension would not be valid as described in this section."

The driver must request a hearing within 10 days after the arrest. ORS 813.410(3).

[2] Light emitting diode.

admitted without objection. Petitioner's attorney then asked Bigelow, "What would the potential for error be then in a circumstance where this particular machine was reading .01 high?" At that point, the hearings officer interrupted and indicated that he would not allow Bigelow to testify further.[3]

■      The hearings officer issued an order suspending petitioner's license. Petitioner sought review by the circuit court, which vacated MVD's order. ORS 813.450. Although MVD appeals from the judgment of the circuit court, we review MVD's order. *Shakerin v. MVD*, 101 Or App 357, 360, 790 P2d 1180 (1990).

■      In excluding Bigelow's testimony, the hearings officer concluded that his testimony was not relevant to any issue that was within the permissible scope of a license suspension hearing. ORS 813.410(5) provides, in part:

"The scope of [a license suspension hearing] shall be limited to whether the suspension is valid as described in this subsection. A suspension under this section is valid if all of the following requirements have been met:

"* * * * *

"(c)   The [driver] took the [breath] test and the test disclosed that the level of alcohol in the person's blood at the time of the test was:

"* * * * *

"(B)   .04 percent or more by weight if the person was driving a commercial motor vehicle[.]"

Petitioner contends that the accuracy and precision of the breath testing machine are relevant to the factual issue of whether the machine "disclosed" that he had an unlawful amount of alcohol in his blood. MVD apparently contends that the Intoxilyzer "disclosed" an unlawful level of alcohol in petitioner's blood because the machine had been properly certified and it displayed a particular numeric result when petitioner took the breath test.

---

[3] The hearings officer did allow respondent to make an offer of proof. Petitioner's "offer of proof" is confusing and consists primarily of legal arguments. Nonetheless, the error is preserved. Petitioner was not required to make an offer of proof in this case, because one would not have provided any additional information that would bear on the legal question of whether he could challenge the accuracy or the precision of the Intoxilyzer. *State v. Olmstead*, 310 Or 455, 461, 800 P2d 277 (1990).

We faced a similar conundrum in *Hilton v. MVD*, 93 Or App 388, 762 P2d 1030 (1988), *aff'd* 308 Or 150, 775 P2d 1378 (1989). In that case, MVD proposed to suspend Hilton's license, and Hilton requested a hearing. At the time, *former* ORS 482.541(4)(b)[4] provided another issue that could be raised in an MVD hearing: whether

> "[t]he police officer had reasonable grounds to believe, at the time the request was made, that the person arrested had been driving under the influence of intoxicants * * *."

Hilton contended that he was not the person who had been driving the car when the police officer stopped it. The hearings officer concluded that *former* ORS 482.541(4)(b) only allowed inquiry into whether the police officer reasonably believed that Hilton was the driver and that any question about the actual driver's identity was beyond the scope of inquiry allowed by the statute.[5]

In reversing the hearings officer, we observed:

> "Reasonable grounds, however, are a product of the officer's available information and perception, and *that information and perception may or may not reflect the true facts*. If a person was not, in fact, driving, it would be erroneous to impose a penalty." 93 Or App at 394. (Emphasis supplied.)

We held that the Due Process Clause of the Fourteenth Amendment required MVD to provide Hilton an opportunity to prove that he was not the driver. The Supreme Court affirmed on the ground that the legislature intended the licensee to have an opportunity to show that the true facts were different from what the police officer reasonably believed.

This case presents a similar issue — whether ORS 813.410(5)(c) permits an inquiry into whether the breath test result reflected the true facts. Resolution of that question depends on the meaning of the word "disclose." To "disclose" means

---

[4] *Former* ORS 482.541 (*repealed by* Or Laws 1985, ch 16, § 475).

[5] When the police officer stopped the car, Hilton initially claimed that he had been driving, but later changed his story. He never contended that the officer did not reasonably suspect that he had been the driver.

"to expose to view * * *: lay open or uncover (something hidden from view)." *Webster's Third New International Dictionary* 645 (unabridged 1976).

*Webster's* lists the word "reveal" as a synonym for "disclose." Thus, the breath test is intended to *uncover* or *reveal* the level of alcohol in the subject's blood at the time the test is administered. If the machine is inaccurate or imprecise, it may not uncover or reveal much of anything.

We recognize that the legislature has authorized the Oregon State Police to approve methods of performing breath tests and to implement procedures to certify the accuracy of the equipment that is used in performing those tests. ORS 813.160(1)(b). However, nothing in ORS 813.160 suggests that the legislature intended a breath testing machine to create an irrebuttable presumption by displaying a particular result on its digital readout. A driver who faces a license suspension is entitled to try to prove that that result does not reflect the true facts.

The hearings officer incorrectly interpreted the permissible scope of a hearing under ORS 813.410(5)(c), and he erred by refusing to allow petitioner to introduce evidence that may have supported his contentions about the accuracy and precision of the Intoxilyzer. The circuit court correctly set aside MVD's suspension order, but it should have remanded to MVD for further proceedings in the light of its correct interpretation of ORS 813.410(5)(c). ORS 813.410 (4)(a)(B).

Judgment vacating suspension order affirmed and remanded with instructions to remand to MVD for proceedings consistent with this opinion.

**LEESON, J.,** dissenting.

The majority ignores the context within which the critical statutory passage occurs, and thereby replaces a duly enacted statute with one more to its pleasing. That is not our role. Accordingly, I dissent.

The issue in this case is whether evidence impeaching the accuracy of a breath test is relevant to whether the breath test "disclosed [an unlawful] level of alcohol in the person's blood." ORS 813.410(5)(c). To resolve that issue, we

must decide whether "disclosed" means "accurately disclosed" in that statute. The statutory scheme indicates that it does not.

ORS 813.100(3) provides that if a person submits to a breath test under the implied consent law, and the test *"discloses * * * [an unlawful] level of alcohol in the person's blood,"* the person's driving privileges are subject to suspension under ORS 813.410, and the police officer must immediately take custody of the person's driver's license and send MVD a report of the incident under ORS 813.120. (Emphasis supplied.) If MVD receives a report under ORS 813.120, it must propose to suspend the person's driver's license. ORS 813.410(2). The person may request a hearing, ORS 813.410(2), the scope of which includes whether the breath test *"disclosed [an unlawful] level of alcohol in the person's blood."* ORS 813.410(5)(c). (Emphasis supplied.)

The breath test "discloses [an unlawful] level of alcohol," within the meaning of ORS 813.100(3), if it shows an unlawful level of alcohol, regardless of its accuracy. *See State v. Mittelstadt*, 82 Or App 366, 369, 728 P2d 93 (1986). Otherwise, the accuracy of the breath test would have to be determined before the officer could immediately take custody of the person's driver's license and send a report to MVD. "Disclosed" does not mean "accurately disclosed" in that provision.

The same language used in different parts of a statute is presumed to be used in the same sense throughout, absent an indication of contrary intent. *See, e.g., Portland Assn. of Teachers v. School Dist. No. 1*, 51 Or App 321, 326, 625 P2d 1336 (1981). ORS 813.100(3) incorporates ORS 813.410 by reference.

There is no indication that the legislature intended the term "disclose" to have a different meaning in ORS 813.410(5)(c) than it has in ORS 813.100(3). To the contrary, there is a strong indication that the legislature intended the same meaning. Had the legislature wanted to make the accuracy of the breath test relevant in the administrative suspension hearing, it easily could have used the settled

language of the criminal driving under the influence of intoxicants (DUII) statute. ORS 813.010. Under that statute, evidence impeaching the breath test is admissible. *State v. Clark*, 286 Or 33, 593 P2d 123 (1979). Significantly, the language of the DUII statute is not used in ORS 813.410(5)(c), which was enacted after *Clark*.

There being no contrary indication, we should apply the same construction to ORS 813.410(5)(c) as is applicable in ORS 813.100(3). The term "disclosed" in ORS 813.410(5)(c) does not mean "accurately disclosed." The only evidence relevant to what the breath test disclosed is the test result itself.

The majority appears oblivious to the parallel usage of the critical statutory phrase, preferring instead to focus on *Webster's Dictionary*. It also cites *Hilton v. MVD*, 308 Or 150, 775 P2d 1378 (1989), apparently because it considers that case to have presented a "similar issue." 122 Or App at 112. In *Hilton*, the respondent sought to present evidence that he did not drive the car. The scope of the hearing included whether he refused or failed a breath test under the implied consent law. *Former* ORS 482.541(4)(c) (*since amended* and renumbered ORS 813.410(5)(c)). The respondent was subject to the implied consent law, and could refuse or fail a breath test under that law, only if he drove. *Former* ORS 487.805 (*since amended* and renumbered ORS 813.100). Therefore, the court held that whether the respondent was the driver of the car was within the *literal* scope of the hearing. 308 Or at 156.[1] Any support the majority finds in *Hilton* for its position in this case is question-begging at best.

ORS 813.410(5)(g) and (h) provide the only challenges to the breath test within the scope of the hearing. They permit attacks by evidence that the person who administered

---

[1] In its review of *Hilton*, the majority sets forth *former* ORS 482.541(4)(b) (renumbered ORS 813.410(5)(b)), which made it an issue within the scope of the hearing whether the police officer had a reasonable ground to believe that the person was driving under the influence of intoxicants. The majority then explains:

"The Supreme Court [held] that the legislature intended the licensee to have an opportunity to show that the true facts were different from what the police officer reasonably believed." 122 Or App at 112.

The majority obscures the statutory basis for the Supreme Court's holding in *Hilton*. As previously noted, the Supreme Court rested its decision on *former* ORS 482.541(4)(c), not (b).

the test was not qualified, or that the methods, procedures and equipment used did not comply with the requirements of ORS 813.160.

ORS 813.160 directs the Health Division to approve methods of performing chemical analyses of a person's blood that are "satisfactory for determining alcoholic content." OAR 257-30-035, adopted pursuant to that statute, allows breath testing equipment to be certified as accurate if the test result deviates no more than .01 percent high or .02 percent low of the expected result. That rule has been in effect since 1985, and was in effect in 1989 when the legislature established the limit of .04 percent for suspension of commercial driving privileges. ORS 813.160 also requires that the breath testing equipment be certified as accurate as defined by the rule at least once every 90 days. Respondent does not dispute that the breath testing equipment was certified as accurate as required by statute. Neither does he dispute that the equipment was operated by a qualified person in accordance with all applicable procedures.

The hearings officer properly excluded respondent's extraneous challenge to the breath test. Substantial evidence supports MVD's order upholding the suspension. I would reverse and remand with instructions to reinstate the suspension order.

Accordingly, I dissent.

Richardson, C. J., and Rossman and Deits, JJ., join in this dissent.