Argued and submitted May 13, decision of the Court of Appeals and judgment of the circuit court reversed; order of the Motor Vehicles Division affirmed June 30, 1994

In the Matter of the Suspension of
the Driving Privileges of

Maurice Gene OWENS, Jr.,
*Respondent on Review,*

*v.*

MOTOR VEHICLES DIVISION,
*Petitioner on Review.*

(CC CC91-25; CA A71116; SC S40687)

875 P2d 463

Kaye E. Sunderland, Assistant Attorney General, Salem, argued the cause on behalf of petitioner on review. With her on the petition were Theodore R. Kulongoski, Attorney General, and Virginia L. Linder, Solicitor General, Salem.

Steven L. Price, Hillsboro, argued the cause and filed a response on behalf of respondent on review.

Before Carson, Chief Justice, and Gillette, Van Hoomissen, Fadeley, Unis, and Graber, Justices.

UNIS, J.

**UNIS, J.**

■       This case involves the scope of a Motor Vehicles Division (MVD) license suspension hearing under ORS 813.410(5).[1] Specifically, the issue presented in this case is whether the accuracy of the result of a chemical breath test administered to determine the blood alcohol content of a driver, who has been arrested for driving a commercial motor vehicle while under the influence of intoxicants (DUII), may be challenged (impeached) if the person who administers the test is qualified to administer the test under ORS 813.160 and if the methods, procedures, and equipment used in the test comply with the requirements of ORS 813.160. We hold that it may not.

The facts in this case are not in dispute. Maurice Owens was arrested and charged with driving a commercial motor vehicle while under the influence of intoxicants. After being taken to the Wasco County jail, Owens was informed of his rights concerning a chemical test of his breath to determine the alcohol content of his blood and the consequences of refusing to take the test. *See* ORS 813.100, ORS 813.130 (providing procedures). Owens agreed to take the test. The test was administered by a properly qualified person. The methods, procedures, and equipment (Intoxilyzer) used in the test complied with all applicable statutory requirements and administrative rules. The digital display readout on the Intoxilyzer breath testing machine showed a numeric result of a blood alcohol content in Owens' blood of 0.04 percent by weight.

Owens timely requested an MVD hearing to avert automatic suspension of his commercial driver's license.[2] At

---

[1] The hearing in this case was held on April 3, 1991. Throughout this opinion, we refer to the 1989 version of the Oregon Revised Statutes, which was in effect at the time relevant to the hearing.

[2] ORS 813.410(2) and (3) provide in part:

"(2) If [MVD] receives from a police officer a report pursuant to ORS 813.120 that discloses that the person was driving a commercial motor vehicle and refused to submit to the test or submitted to the test and the person's blood, as shown by the test, had .04 percent or more by weight of alcohol, [MVD] shall suspend the person's commercial driver license on the 30th day after the date of arrest unless, at a hearing described under this section, [MVD] determines that the suspension would not be valid as described in this section. * * *

"(3) If within 10 days from the date of arrest, [MVD] receives a written

the hearing, Owens called Bigelow, a microbiologist, as an expert witness. Bigelow's background included training in the calibration and use of Intoxilyzer breath testing machines. Bigelow testified, without objection, that the light emitting mode readout on the Intoxilyzer displays three digits. Owens' lawyer then asked Bigelow, "What would the potential for error be then in a circumstance when the particular machine was reading .01 high?"[3] The hearings officer refused to allow Bigelow to answer that question because he did not believe that the answer would be relevant to any issue that was within the scope of a license suspension hearing as set forth in ORS 813.410(5), the text of which is set out *infra*.

■     Owens' lawyer then made an offer of proof by stating on the record what he expected Bigelow would have testified if permitted to answer.[4] According to Owens' lawyer, Bigelow would testify that (1) "since the Oregon Administrative Rules provide for a maximum of a .010 for certification and a minimal [*sic*] of .020, * * * without using the third digit on the Intoxilyzer, * * * you present the possibility of a 90 percent error when * * * using the piece of equipment," and (2) "the error factor, in a .01 for a test to a .04 seems [excessive] given the fact that it represents 25 percent of the entire amount necessary for the suspension. And he would have explained from a scientific standpoint, probably, that 25 percent is too large a margin of error to be acceptable for scientific purposes."

At the conclusion of the hearing, the hearings officer issued an order suspending Owens' driver's license for one year pursuant to ORS 813.410(2). Owens sought review in

request for a hearing from a person whose driving privileges or commercial driver license the division proposes to suspend under this section, [MVD] shall provide a hearing in accordance with this section. Except as otherwise provided under this section, a hearing held by the division under this section shall be subject to the provisions for contested cases, other than appeal provisions, under ORS 183.310 to 183.550."

[3] OAR 257-30-035, adopted pursuant to ORS 813.160, allows breath testing instrument equipment to be certified as accurate if the test result deviates no more than .01 percent high or .02 percent low of the expected value of a reference sample provided by the Oregon State Crime Detection Laboratory.

[4] This method of offer of proof is referred to as "avowal by counsel." Wright and Graham, 21 Federal Practice and Procedure 214-15, § 5040 (1977).

the circuit court under ORS 813.410(7). The circuit court vacated the MVD order, holding that it was invalid. The circuit court reasoned that evidence regarding the accuracy of the Intoxilyzer had been improperly excluded and that, because the result of Owens' breath test had been borderline of the legal blood level of alcohol and the machine used on Owens had registered inaccuracies in the previous year, the Intoxilyzer test did not disclose "that [Owens] had a .04 [percent] blood alcohol."

On review, the Court of Appeals, sitting *in banc*, affirmed the circuit court's judgment and remanded the case to MVD with instructions to allow Owens to introduce evidence about the accuracy and precision of the Intoxilyzer. *Owens v. MVD*, 122 Or App 108, 857 P2d 144 (1993). The majority opinion held:

> "[N]othing in ORS 813.160 suggests that the legislature intended a breath testing machine to create an irrebuttable presumption by displaying a particular result on its digital readout. A driver who faces a license suspension is entitled to try to prove that that result does not reflect the true facts." *Id.* at 113.

Judge Leeson, in a dissenting opinion joined by three other members of the Court of Appeals, disagreed. She would have held that evidence impeaching the accuracy of a breath test is not relevant to whether the breath test "disclosed [an unlawful] level of alcohol in the person's blood" if the person administering the test was qualified to administer the test under ORS 813.160 and if the methods, procedures, and equipment used in the test complied with the requirements of ORS 813.160. *Id.* at 113-16 (Leeson, J., dissenting). Because there is no dispute in this case that the test was administered by a properly qualified person and that the methods, procedures, and equipment used in the breath test administered to Owens complied with the requirements of ORS 813.160, Judge Leeson would have held that "[t]he only evidence relevant to what the breath test disclosed is the test result itself." *Id.* at 115.

We allowed MVD's petition for review and now reverse the decision of the Court of Appeals and the judgment of the circuit court. We affirm MVD's order of suspension.

The scope of an MVD license suspension hearing is defined in ORS 813.410(5), which provides:

"The scope of a hearing under this section shall be limited to whether the suspension is valid as described in this subsection. A suspension under this section is valid if all of the following requirements have been met:

"(a)   The person, at the time the person was requested to submit to a test under ORS 813.100, was under arrest for driving while under the influence of intoxicants in violation of ORS 813.010 or a municipal ordinance.

"(b)   The police had reasonable grounds to believe, at the time the request was made, that the person arrested had been driving under the influence of intoxicants in violation of ORS 813.010 or of a municipal ordinance.

"(c)   The person refused a test under ORS 813.100, or took the test *and the test disclosed that* the level of alcohol in the person's blood at the time of the test was .08 percent or more by weight if the person was not driving a commercial motor vehicle or .04 percent or more by weight if the person was driving a commercial motor vehicle.

"(d)   If the report under ORS 813.120 indicates that the person was driving a commercial motor vehicle, the vehicle was in fact a commercial motor vehicle as defined in ORS 801.208.

"(e)   The person had been informed under ORS 813.100 of rights and consequences as described under ORS 813.130.

"(f)   The person was given written notice required under ORS 813.100.

"(g)   If the person arrested submitted to the test, the person administering the test was qualified to administer the test under ORS 813.160.

"(h)   If the person arrested submitted to the test, the methods, procedures and equipment used in the test complied with requirements under ORS 813.160." (Emphasis added.)

In this case, there is no claim that the requirements of subsections (a), (b), (d), (e), (f), (g), or (h) of ORS 813.410(5) were not met. The issue in this case centers on subsection (c), particularly on the meaning of the phrase "and the test disclosed that." Owens argues that that phrase refers to the *actual level of alcohol* in the person's blood at the time of the test. He reasons that the dictionary definition of the term

"disclosed" means to "reveal" or "uncover," that a breath testing device cannot "disclose" anything unless it is accurate, and that the accuracy of a breath test result as shown by the breath testing machine is, therefore, relevant to the factual issue of whether the testing machine "disclosed" that the person had an unlawful amount of alcohol in his or her blood at the time of the test.

MVD argues that the phrase "and the test disclosed that," as used in the context of ORS 813.410(5)(c), refers to the test result, *i.e.*, the particular numeric result registered on the breath testing machine digital readout when the person took the test.

We must determine what the legislature intended by the use of the phrase "and the test disclosed that" in ORS 813.410(5)(c). In interpreting a statute, the task of this court is to discern the intent of the legislature. ORS 174.020; *PGE v. Bureau of Labor and Industries*, 317 Or 606, 610, 859 P2d 1143 (1993). The best evidence of legislative intent is the statute itself. *PGE v. Bureau of Labor and Industries, supra,* 317 Or at 610-11. *See also Whipple v. Howser*, 291 Or 475, 480, 632 P2d 782 (1981) (there is no more persuasive evidence of the purpose of a statute than the words used by the legislature to express its wishes). In this first level of analysis, the court considers the context of the statutory provision at issue, which includes other provisions of the same statute and related statutes. *PGE v. Bureau of Labor and Industries, supra,* 317 Or at 611. In interpreting a statute, this court is "simply to ascertain and declare what is, in terms or substance, contained therein, *not* to insert what has been omitted, or *to omit what has been inserted*; and where there are several provisions or particulars such construction is, if possible, to be adopted as will give effect to all." ORS 174.010 (emphasis added). If the intent of the legislature is clear from the text and context of the statute, further inquiry is unnecessary. *PGE v. Bureau of Labor and Industries, supra,* 317 Or at 611.

There are several reasons that suggest that the text and context of ORS 813.410(5)(c), which is a part of what is commonly referred to as the implied consent law, support MVD's reading of the statute. If Owens were correct, then the statute could read simply: "The person * * * took a breath

test and the level of alcohol in the person's blood at the time of the test was [a certain] percent by weight * * *." Such an interpretation eliminates any reference to what the test "disclosed," thus making the phrase "and the test disclosed that" in ORS 813.410(5)(c) mere surplusage.

■ When given its plain and ordinary meaning, the phrase "and the test disclosed that" supports MVD's interpretation of that phrase in ORS 813.410(5)(c). An Intoxilyzer machine indicates the result of the breath sample analysis by a digital display reading of the blood alcohol content. Thus, the breath test "discloses" the "level of alcohol in [a] person's blood" *by displaying* (showing, revealing) *a particular numeric result* on its digital readout, *i.e.*, a particular percentage of blood alcohol as a test result.

A reading of ORS 813.410 and other related statutes also suggests that MVD's interpretation is correct. ORS 813.410(5) provides two specific avenues for challenging the validity of a breath test result. The first, set forth in subsection (g), permits a challenge based on the requirement that "the person administering the test was qualified to administer the test under ORS 813.160." The second, set forth in subsection (h), permits inquiry into whether the "methods, procedures and equipment used in the test complied with requirements under ORS 813.160." ORS 813.160(1), in turn, requires, *inter alia*, that to be valid, breath tests must be performed by a person qualified to administer them, and the state police must "[t]est and certify *the accuracy* of equipment used by police officers for chemical analyses of a person's breath before regular use of such equipment and periodically thereafter at intervals of not more than 90 days." ORS 813.160(b)(C) (emphasis added). As previously noted, OAR 257-30-035, adopted pursuant to ORS 813.160, allows breath testing equipment to be certified as accurate if the test result deviates no more than .01 percent high or .02 percent low of the expected result. Permitting those particular challenges to the proper administration of the test and to the *accuracy* of a breath test result implies a legislative intent to exclude other challenges to the accuracy of such a test not specifically mentioned. *See Smith v. Clackamas County*, 252 Or 230, 233, 443 P2d 512 (1968) (the inclusion of specific matters implies a legislative intent to exclude related matters

not mentioned). Indeed, permitting a challenge to the accuracy of the test result would subsume the grounds specified in ORS 813.410(5)(g) and (h), thereby making those two subsections of that statute superfluous. *See* ORS 174.010 (quoted *supra*).

Under the implied consent law, ORS 813.410 is closely linked to ORS 813.100. Under ORS 813.100(1), "[a]ny person [lawfully arrested for driving while under the influence of intoxicants] shall be deemed to have given consent * * * to a chemical test of the person's breath for the purpose of determining the alcoholic content of the person's blood[.]" Under ORS 813.100(3), if a person submits to a breath test under the implied consent law, and the "test * * * discloses that the person, at the time of the test, had [an unlawful] level of alcohol in the person's blood[,] * * * the person's driving privileges are subject to suspension under ORS 813.410," and the police officer must, among other things, immediately take custody of the person's driver's license and provide MVD with a report of the incident in the form required by ORS 813.120.

ORS 813.410(1), in turn, provides in part that if MVD receives a report that is in substantial compliance with ORS 813.120, MVD

"shall suspend the driving privileges of the person in this state on the 30th day after the date of arrest unless, at a hearing described under this section, [MVD] determines that the suspension would not be valid as described in this section."

ORS 813.410(2) provides in part:

"If [MVD] receives from a police officer a report pursuant to ORS 813.120 that discloses that the person was driving a commercial motor vehicle and * * * submitted to the test and the person's blood, as shown by the test, had .04 percent or more by weight of alcohol, [MVD] shall suspend the person's commercial driver license on the 30th day after the date of arrest unless, at a hearing described under this section, [MVD] determines that the suspension would not be valid as described in this section."

The person may request a hearing. ORS 813.410(3). The scope of the hearing includes whether the breath "test disclosed [an unlawful] level of alcohol in the person's blood." ORS 813.410(5)(c).

■ Given the interlocking nature of ORS 813.410 and ORS 813.100, it may be presumed that the legislature used the word *"discloses"* in ORS 813.100(3) and the word *"disclosed"* in ORS 813.410(5)(c) in the same sense. *See, e.g., School District No. 17 v. Powell*, 203 Or 168, 185, 279 P2d 492 (1955) (in the absence of an indication of a contrary intent, when the same word is used in a different part of an Act, it will be presumed to be used in the same sense).

Both ORS 813.100(3) and ORS 813.410(5) require certain action based on what the breath test described in ORS 813.100(1) "discloses" or "disclosed." If the word "discloses" in ORS 813.100(3) is read to refer to the accuracy of the level of alcohol, as Owens contends, then the accuracy of the blood testing instrument would have to be determined before the officer could perform his required duties under ORS 813.100(3), *viz*, immediately take custody of the person's driver's license and send a report to MVD. It is apparent, however, that the legislature intended the police officer administering the test to rely upon the numeric reading of the Intoxilyzer in taking the action required by ORS 813.100(3) and ORS 813.410(5), rather than requiring the officer to question and determine the accuracy of the displayed result before proceeding.

Although the text and context of ORS 813.410(5)(c) suggest that MVD's interpretation of the statute is correct, and it appears to us that the Court of Appeals did not consider all of the context that should be consulted, we cannot say that the Court of Appeals' position was wholly implausible. However, when legislative history is consulted, the Court of Appeals' position is no longer plausible. *See PGE v. Bureau of Labor and Industries, supra*, 317 Or at 611-12 (when text and context of statute do not make legislature's intent clear, court looks to legislative history).

ORS 813.410(5), originally submitted as SB 710, was enacted in 1983 as part of a substantial amendment to the Motor Vehicle Code's implied consent law.[5] Or Laws 1983, ch

---

[5] The legislative intent of ORS 813.100 and ORS 813.410 is to be found in the history of Oregon Laws 1983, chapter 721 (SB 710). Both statutes were enacted as part of the Motor Vehicles Code revision of 1983. Or Laws 1983, ch 338, §§ 358, 591. Subsequently, the legislature enacted Oregon Laws 1985, chapter 16, sections 167 and 298, amending ORS 813.100 and ORS 813.410 to reconcile them with the change

721, § 4. Although the wording of the bill continued to evolve throughout the legislative process, the bill's primary emphasis remained constant. The bill was designed to provide more effective deterrents to DUII by ensuring that criminal and administrative sanctions for that conduct would be swift and certain. *See, e.g.*, Minutes, Senate Committee on Judiciary, Public Hearing, March 31, 1983, page 8; Minutes, Senate Committee on Judiciary, Public Hearing and Work Session, April 12, 1983, pages 7, 13; Minutes, Senate Committee on Judiciary, April 27, 1983, page 7; Minutes, Senate Committee on Judiciary, Work Session, May 12, 1983, page 2; Vinita Howard testimony, House Committee on Judiciary, June 16, 1983, Ex F, pages 1-3.

ORS 813.410 is the portion of SB 710 that ensures a swift administrative adjudication of the validity of the suspension. The Senate and House Committees on Judiciary discussed at some length the appropriate time lines for imposing a final license suspension order. One of the main issues they addressed was how to withdraw the driving privileges of a person arrested for DUII in the shortest time possible, while still permitting MVD sufficient time to issue a final order. *See* Minutes, Senate Committee on Judiciary, Work Session, April 27, 1983, pages 11-13; Letter from Myer Avedovech, House Committee on Judiciary, June 23, 1983, Ex N, pages 1-4; Minutes, House Committee on Judiciary, July 1, 1983, pages 2-3. In discussing the potential difficulties that MVD would face in conducting an expedited hearing, legal counsel for the Governor's Task Force on DUII pointed out that the hearing could not proceed until MVD received proof from police that the person administering a breath test was qualified to do so. Minutes, House Committee on Judiciary, July 1, 1983, pages 2-3. Neither committee appears to have discussed potential scheduling problems arising from a petitioner's challenge to his or her breath test result on any bases other than those set forth in ORS 813.410(5)(g) and (h).

The reason for this omission is that the committee viewed the breath test result as dispositive of the person's blood alcohol content at the time of the test. During a discussion of the judicial scope of review of a license suspension

adopted in 1983 to the implied consent law in Oregon Laws 1983, chapter 721 (SB 710).

order in the House Committee on Judiciary, Representative Lombard, a member of the committee, responded to a question regarding the committee's position on a "more stringent or APA type of approach at the circuit court level." Tape Recording, House Committee on Judiciary, Work Session, July 1, 1983, tape 488, side B. He explained:

> "At first blush, I am not adverse to that. *We set out under subparagraph 4 the scope of the hearing first of all. And the sole issue is whether or not the suspension is valid; and it is valid if all of the following requirements have been met and we detail those requirements. So, go down through that list and we look at —* look at number (1) the person was under arrest for driving under the influence, number (2), and this is probably going to be your most fruitful ground for appeal, whether the police officer had reasonable grounds to believe that the person arrested had been driving under the influence, *number (3) that the person refused or took and failed — and that seems to me to be a pretty much up or down*, number (4) they were informed of the consequences, that's mechanical, they were informed of their rights, that's mechanical, they were given written notice, that's mechanical, and then we deleted the last two provisions — did we not the other day — (g) and (h) — or were we going to recommend that?" *Id.* (emphasis added).

After someone interjected that "Those are still in," Representative Lombard continued:

> "All right. The qualifications of the person administering and the equipment was good. So I see — *you're really going to be seeing issues on qualifications, reasonable grounds to believe, and the equipment.* I guess on those three issues I don't have any aversion to limiting the circuit court's scope of review." *Id.* (emphasis added).

Thus, it appears that in the committee's view the *only* grounds for challenging a blood test result were those provided in ORS 813.410(5)(g) and (h), relating to whether the machine had been properly tested and administered. Whether a test "disclosed" a particular level of blood alcohol was a matter of reading the test result.

This understanding of SB 710 is reflected throughout legislative history. In discussing what would trigger automatic suspension, committee members from both the House and the Senate routinely referred to "blowing over .10

[percent]," "flunking the test," and "testing" or "registering" .10 percent blood alcohol content. *See, e.g.*, Minutes, Senate Committee on Judiciary, Public Hearing/Work Session, April 12, 1983, page 12; Minutes, Senate Committee on Judiciary, Work Session, April 27, 1983, pages 8, 23; Minutes, Senate Committee on Judiciary, May 4, 1983, pages 1, 5; Minutes, Senate Committee on Judiciary, May 19, 1983, page 2; Testimony of Arno Denecke, House Committee on Judiciary, June 16, 1993, Ex D. Specifically, Legal Counsel Nina Johnson explained to the Senate Committee on Judiciary that under SB 710, if an arrested person "takes [a] breath test *with .10 or more result*, the person's driving privileges are suspended immediately," subject to certain procedures. Testimony of Nina Johnson, Senate Committee on Judiciary, May 4, 1983, Ex A, page 1 (emphasis added). Later, she reiterated that "[if] a person is under arrest for DUI[I], and either refuses to take the breath test or takes it *and the reading is .10 percent blood alcohol or more*, the person's driver's license is immediately suspended * * *." Testimony of Nina Johnson, Senate Committee on Judiciary, May 18, 1983, Ex E, page 1 (emphasis added). Similarly, Arno Denecke explained that section 6 of SB 710 "would continue the immediate allowance of an occupational license to a person *who registers* a .10 [percent] BAC upon the first arrest[.]" Testimony of Arno Denecke, House Committee on Judiciary, June 14, 1983, pages 1-2 (emphasis added). Given those explanations, there can be little doubt that, for the purpose of a license suspension hearing, the legislature understood that the test result would be dispositive if the person who administered the test is qualified to administer it and the methods, procedures, and equipment used in the test comply with the statutory requirements.

■    In sum, the text, context, and legislative history all support MVD's position that the phrase "and the test disclosed that" in ORS 813.410(5)(c) refers to the test result, *i.e.*, the particular numeric result registered by the breath testing instrument when the person took the test. Consequently, evidence impeaching the test result of a chemical breath test that is administered to determine the blood alcohol content of a person who has been arrested for DUII, other than that evidence permitted under ORS 813.410(5)(g) and (h), is not relevant to any issue that is within the permissible scope of a

license suspension hearing as set forth in ORS 813.410(5). It follows, therefore, that the hearings officer in this case was correct in excluding Bigelow's testimony, which was offered to impeach the accuracy of the breath test result. Substantial evidence supports MVD's order upholding the suspension of Owens' driver's license.

The decision of the Court of Appeals and the judgment of the circuit court are reversed. The order of the Motor Vehicles Division is affirmed.