Argued and submitted September 7, decision of the Court of Appeals and judgment
of the circuit court affirmed December 1, 1995

ZIDELL MARINE CORPORATION,
a corporation,
*Plaintiff,*

*v.*

WEST PAINTING, INCORPORATED,
a corporation,
Terry K. Gaya, Holly Gaya,
Capital Resource Finance Corp.,
a corporation,
John Maring, Rodda Paint Co., a corporation,
and Jotun Valspar Marine Coatings,
also known as Jotun Valspar,
a division of The Valspar Corporation,
a corporation,
*Respondents on Review,*
*and*

MILLER PAINT CO., INC.,
a corporation,
*Petitioner on Review.*

(CC 9307-04357; CA A81893; SC S42287)

906 P2d 809

Monica M. O'Brien, of Gleason, Scarborough, McNeese, O'Brien & Barnes, P.C., Portland, argued the cause and filed the petition for petitioner on review.

Gary Roberts, of Schwabe, Williamson & Wyatt, Portland, argued the cause and filed the briefs for respondents on review West Painting, Incorporated; Terry K. Gaya; Holly Gaya; Capital Resource Finance Corp.; and John Maring.

No appearance for respondents on review Rodda Paint Co. and Jotun Valspar Marine Coatings.

GRABER, J.

## GRABER, J.

The question to be answered in this case is whether a writ of continuing garnishment, provided for in ORS 29.401 to 29.415,[1] is available with respect to contract payments owed to an independent contractor for work not yet completed under a "turnkey" purchase order that covers labor and materials. We answer that question "no."

Defendants Terry and Holly Gaya were the owners of West Painting, Inc. (West). West was incorporated in Washington in March 1985, but was administratively dissolved on June 16, 1986. The Gayas apparently were unaware that West's corporate status had lapsed, and they continued to operate West as if it were a corporation.

In December 1984, before West became incorporated, Miller Paint, Inc. (Miller), opened an account in West's name and granted a line of credit to West, pursuant to which Miller sold paint to West. The Gayas gave no individual guarantees with respect to West's obligation to Miller.

In 1991, after West had been dissolved, the Gayas signed a "Security Agreement" ostensibly between West and Capital Resource Finance Corp. (Capital). The Gayas were denominated as president and secretary of West in that agreement. Under that agreement, West assigned its accounts receivable to Capital, acting as a factor, in order to finance West's continued operations. Capital filed a financing statement in Oregon in 1991, under the name West Painting, Inc.

On April 6, 1992, West entered into a contract with Zidell Marine Corp. (Zidell), under which West was to paint one of Zidell's barges.[2] Under the contract, Zidell was to pay West on a periodic basis.

On March 18, 1992, Miller obtained a judgment against West for money owed as a result of unpaid purchases of paint, which had occurred in 1990 and 1991. In June 1992,

---

[1] Pertinent portions of ORS 29.401 to 29.415 are set out later in the text of this opinion.

[2] The contract between Zidell and West provides in part:

"This purchase order covers all labor & material required to paint-out complete, in a turnkey manner, all specified interior and exterior surfaces of ZMC barge No. 647."

Miller discovered that West had been dissolved. Miller then obtained a judgment against the Gayas individually for the same unpaid purchases of paint.

On June 14, 1993, Miller served two writs of continuing garnishment on Zidell: one for the judgment against West and one for the judgment against the Gayas individually. In the West case, Zidell responded that Zidell owed money to West. Zidell stated that it might owe West as much as $78,860 in the future, subject to offsets, but that it would not release the funds to Miller until the work was completed and all offsets were determined and applied. In the Gayas' case, Zidell responded that it owed no money to, and held no personal property, of the Gayas.

Thereafter, another creditor of West made a demand for the money that Zidell would owe to West for painting the barge. Zidell brought this interpleader action, pursuant to ORCP 31,[3] to determine which of West's creditors is entitled to the money. Miller, a defendant in the interpleader action, filed a cross-claim against all other defendants.[4] The cross-claim alleged that, when Miller served its writs of continuing garnishment, it became a lien creditor whose claim is superior to the claims of the other defendants pursuant to a provision of the Uniform Commercial Code, ORS 79.3010(1)(b).[5] Miller

---

[3] ORCP 31 provides in part:

"(A) Persons having claims against the plaintiff may be joined as defendants and required to interplead when their claims are such that the plaintiff is or may be exposed to double or multiple liability. * * * A defendant exposed to similar liability may obtain such interpleader by way of cross-claim or counterclaim.

"(B) Any property or amount involved as to which the plaintiff admits liability may, upon order of the court, be deposited with the court or otherwise preserved, or secured by bond in an amount sufficient to assure payment of the liability admitted. The court may thereafter enjoin all parties before it from commencing or prosecuting any other action regarding the subject matter of the interpleader action. Upon hearing, the court may order the plaintiff discharged from liability as to property deposited or secured before determining the rights of the claimants thereto."

[4] In addition to Miller, the defendants were West Painting, Inc.; Terry Gaya; Holly Gaya; Capital Resource Finance Corp.; John Maring, the president of Capital; Rodda Paint Co.; and Jotun Valspar Marine Coatings. Neither Rodda nor Jotun made an appearance in the appellate proceedings.

[5] ORS 79.3010(1)(b) provides in part that "an unperfected security interest is subordinate to the rights of: * * * [a] person who becomes a lien creditor before the security interest is perfected."

moved for summary judgment, but the trial court denied the motion.

Capital, too, moved for summary judgment. Capital argued that it had a perfected security interest in West's accounts receivable and that its interest was superior to the interests of the other defendants. The trial court granted Capital's motion and entered a judgment pursuant to ORCP 67 B,[6] dismissing Miller's cross-claim and awarding the interpleaded funds to Capital.[7]

Miller appealed. It argued to the Court of Appeals, as it had below, that it became a lien creditor when it served its two writs of continuing garnishment on Zidell and that Miller's interest had priority over the interests of all other defendants, with respect to the interpleaded funds.

A divided Court of Appeals, sitting in banc,[8] affirmed. The lead opinion, joined by four judges, decided that Miller is not a lien creditor, because a writ of continuing garnishment under ORS 29.401 to 29.415 does not cover the interpleaded funds. *Zidell Marine Corp. v. West Painting, Inc.*, 133 Or App 726, 729-37, 894 P2d 181 (1995). Three judges concurred in the result but disagreed with the lead opinion's statutory analysis. *Id.* at 737-42 (Landau, J., concurring). Two judges dissented, on the ground that Miller was entitled to use a writ of continuing garnishment with respect to the interpleaded funds and, hence, that Miller is a lien creditor. *Id.* at 742-53 (Leeson, J., dissenting).

---

[6] ORCP 67 B provides:

"When more than one claim for relief is presented in an action, whether as a claim, counter-claim, cross-claim, or third party claim, or when multiple parties are involved, the court may direct the entry of a final judgment as to one or more but fewer than all of the claims or parties only upon an express determination that there is no just reason for delay and upon an express direction for the entry of judgment. In the absence of such determination and direction, any order or other form of decision, however designated, which adjudicates fewer than all the claims or rights and liabilities of fewer than all the parties shall not terminate the action as to any of the claims or parties, and the order or other form of decision is subject to revision at any time before the entry of judgment adjudicating all the claims and the rights and liabilities of all the parties."

[7] The issues remaining at the trial court are West's counterclaim against Zidell for breach of contract and Zidell's claim for attorney fees under the contract with West.

[8] Warren, J., did not participate in the case.

Miller petitioned for review, and we allowed the petition. We now affirm the decision of the Court of Appeals.

■ Writs of continuing garnishment are governed by ORS 29.401 to 29.415. Our task is to interpret those statutes. In so doing, we search for the legislature's intent by following the analytical framework described in *PGE v. Bureau of Labor and Industries*, 317 Or 606, 859 P2d 1143 (1993). We first examine the text and context of the statute. If the intent of the legislature is not clear from that examination, we next consider the legislative history. 317 Or at 610-12.

■ Capital argues that a writ of continuing garnishment is available only with respect to an employee's wages for personal services. Capital points, for example, to ORS 29.415, which establishes the form for a writ of continuing garnishment. That section provides in part:

"YOU MUST ANSWER THIS WRIT BY COMPLETING AND FILING A CERTIFICATE OF GARNISHEE WHETHER OR NOT YOU OWE ANY *WAGES* TO THE DEBTOR.

"IF YOU FAIL * * * TO DELIVER THE *WAGES* WHEN REQUIRED TO DO SO, YOU MAY BE SUBJECT TO COURT PROCEEDINGS * * *:

"* * * * *

"* * * This writ *garnishes only wages you owe to the Debtor* as of the date you received this writ, including debts that existed but were not yet due when you received this writ and *wages* that accrue on or before 90 days after the date this writ is issued.* * *

"* * * * *

"* * * [I]f you cannot tell from the writ whether you owe any *wages* to the Debtor, the writ does not garnish anything * * *." (Emphasis added.)

Miller argues, on the other hand, that the writ of continuing garnishment may be used to garnish all forms of earnings resulting from the performance of work for which compensation is given, even if those earnings are not "wages" and even if the person performing the work is an independent contractor. Miller points to sections of the continuing garnishment statute that use the term "earnings" rather than "wages" and that appear to be broad in scope. For example, ORS 29.401 provides:

*"In addition to garnishment proceedings otherwise available* under ORS 29.125 to 29.375 and 29.401 to 29.415, a person for whom a writ of garnishment may be issued under ORS 29.137 may obtain a writ of continuing garnishment against any garnishee who is an employer of *the defendant.* To the extent that the *earnings* are not exempt from garnishment, the garnishment shall be a lien and continuing levy against *earnings* owed by the garnishee to *the defendant* at the time of service of the writ of continuing garnishment and on all *earnings* accruing from the garnishee to *the defendant* from the date of service until 90 days have expired since the date of issuance of the writ or until the employment relationship is terminated, the underlying judgment is vacated, modified or satisfied in full or the writ is dismissed, whichever is sooner." (Emphasis added.)

" 'Defendant' means a *person* whose property is being garnished by a plaintiff and includes a judgment debtor after entry of judgment." ORS 29.125(1) (emphasis added). " 'Person' includes individuals, *partnerships and corporations.*" ORS 29.125(4) (emphasis added).

Miller also points to portions of ORS 29.415. The garnishee is instructed respecting an "EARNINGS EXEMPTION COMPUTATION SCHEDULE." The garnishee is directed to "complete the following form and fill in the correct amounts only if the Garnishee is *an employer of the Debtor under ORS 23.175.*" ORS 29.411 & 29.415 (emphasis added). ORS 23.175 defines "[e]mployer" broadly, to mean "any entity or individual who engages a person to perform work or services for which compensation is given in periodic payments or otherwise, even though the relationship of the person so engaged to the employer may be as an independent contractor for other purposes."

Thus, under Miller's reading of the statutes, Zidell's contract payments to West are subject to the continuing writ of garnishment, because West is a "defendant" and a "person" as defined in ORS 29.125 (1) and (4); Zidell was West's "employer" as that term is defined in ORS 23.175; and West had "earnings." Under Capital's reading of the statutes, however, Zidell's contract payments to West are not subject to the continuing writ of garnishment, because those payments do not constitute "wages" within the meaning of ORS 29.401 to 29.415.

Neither the term "earnings" nor the term "wages" is defined in ORS 29.401 to 29.415. The term "earnings" is defined in ORS 23.175(2):

> " 'Earnings' means compensation paid or payable for personal services, whether denominated as wages, salary, commission, bonus or otherwise, and includes periodic payments pursuant to a pension or retirement program."

That definition would appear to be context for understanding the term "earnings" in ORS 29.401 to 29.415, because it relates to garnishment statutes and is consistent with the computation of an "earnings exemption" under ORS 29.411 and 29.415. However, ORS 23.175 provides that the definitions therein apply only to terms "[a]s used in this section and ORS 23.185." The definition of "employer" found in ORS 23.175 is expressly incorporated by reference in ORS 29.411 and 29.415. The absence of a similar incorporation by reference of the definition of "earnings" found in ORS 23.175 requires us to go further in our search for the meaning of "earnings" in ORS 29.401 to 29.415.

■ In the absence of an applicable statutory definition, this court adheres to the rule that words of common usage typically should be given their plain, natural, and ordinary meaning. *PGE*, 317 Or at 611. "Earnings" are "**a:** something (as wages *or dividends*) earned as compensation for labor *or the use of capital* * * * **b:** the balance of revenue for a specific period that remains after deducting related costs and expenses incurred — compare PROFIT." *Webster's Third New Int'l Dictionary*, 714 (unabridged ed 1993) (emphasis added). By contrast, a "wage" is, as pertinent,

> "a pledge or payment of usu. monetary remuneration by an employer esp. for labor or services usu. according to contract and on an hourly, daily, or piecework basis and often including bonuses, commissions, and amounts paid by the employer for insurance, pension, hospitalization and other benefits; *esp.* : such remuneration paid to a skilled or unskilled laborer." *Id.* at 2568.

Those definitions indicate that the term "earnings" is broader than the term "wages." "Earnings" include "wages," but "wages" do not include all forms of "earnings." "Earnings" include a corporation's profits, for example. "Wages," on the other hand, commonly means an employer's

payment on an "hourly, daily, or piecework basis" to an individual. Under those definitions, an independent contractor, such as West, has "earnings" but not "wages."

The resolution of this case depends on that distinction. As Judge Landau correctly pointed out in the Court of Appeals:

> "Wages are not involved in this case. Zidell does not owe West payment on an hourly, daily, weekly or piecework basis. To the contrary, Zidell was obligated to pay West pursuant to a purchase order, under which West was to provide hired workers, supply material and equipment and acquire insurance coverage, all for the painting of Zidell's barge. When the work on the barge was completed, Zidell was to pay West a predetermined sum of money in order to cover the costs of West's labor and materials. West was not paid according to the length of time required to complete the project. Rather, West was paid according to the cost of the project, plus some amount representing profit. Zidell did not owe West 'wages.' " 133 Or App at 741 (Landau, J., concurring).

In other words, if the writ of continuing garnishment attaches to every sort of "earnings," then Zidell's payments to West are subject to garnishment pursuant to the writ; however, if the writ of continuing garnishment attaches only to "wages," then Zidell's payments to West are not subject to garnishment pursuant to the writ, and the writ is ineffective.

The ambiguity in this case arises from the fact that the legislature used both terms — "earnings" and "wages" — in the statutes governing the writ of continuing garnishment. As noted above, in ORS 29.401, the legislature provides that the writ of continuing garnishment may attach to *"earnings* [that] are not exempt from garnishment." (Emphasis added.) Similarly, ORS 29.405 provides that "[o]nly one writ of garnishment against *earnings*" shall be paid by the garnishee at any one time. (Emphasis added.) By contrast, both ORS 29.411 and 29.415 provide that a "writ of continuing garnishment * * * shall be in substantially the following form." That form refers repeatedly to the garnishee's "wages." The terms may or may not have been intended, by the legislature that chose them, to be used interchangeably.

Because of that ambiguity in the statutes, both proposed readings of ORS 29.401 to 29.415 are plausible.

Because the text and context do not make the legislature's intent clear, we next examine the legislative history of the statutes.

The legislature enacted ORS 29.401 to 29.415 in 1989, as House Bill 2666. Or Laws 1989, ch 876, §§ 2-5. HB 2666 was proposed by the Oregon Collectors Association (Association). At the subcommittee's work session on that bill, Jim Markee, a representative of the Association, explained both the purpose and scope of the bill that his organization had proposed. Tape Recording, House Judiciary Committee, Civil Administration Subcommittee, HB 2666, June 14, 1989, Tape 124, Side A at 251. He stated that

> "in many other states they have what is known as a continuing garnishment in effect, whereby a garnishment against *wages* would continue in some cases until the debt is payed, and in some cases for a shorter time period. * * * [This bill] simply puts into effect a continuing garnishment, *on wages only* * * *. The garnishment once served, served against the employer, would be good for *wages* owing on that day, and for future *wages* due for the next sixty days." *Id.* at 247-61 (emphasis added).

Later at that same meeting, Markee stated that

> "one of the main reasons I think this bill will be good is that if you have a debtor out there that's getting paid every Friday, and a bill collector is garnishing his *wages* every Friday, you're taking twelve dollars and fifty cents to serve the writ of garnishment plus a three dollar issuance fee; and out of every month's *wages*, you've got about sixty dollars of the debtor's *wages* going to just to pay the costs of issuing and serving the writs and this will eliminate that and that same money will apply against the debt and help the debtor get out of debt." Tape Recording, House Judiciary Committee, Civil Administration Subcommittee, HB 2666, June 14, 1989, Tape 125, Side A at 31-39 (emphasis added).

Kenneth Ryder, a lawyer for the Association, next stated that

> "a lot of employers would favor this bill also, because they don't enjoy filling out writs of garnishments on a weekly or a bi-monthly basis. This will save them that problem of having to fill out as many certificates." *Id.* at 43-45 (statement of Kenneth Ryder).

The foregoing testimony shows that the sponsor of HB 2666 sought a writ of continuing garnishment that would attach only to wages paid by an employer to an employee for personal services. The sponsor envisioned the writ of continuing garnishment simply as a convenient means by which a garnishee could garnish an employee's wages each time the employee was paid for personal services — "every Friday" or "on a weekly or a bi-monthly basis." At the House Committee on Judiciary, Civil Administration Subcommittee's public hearing on HB 2666, no member of the subcommittee questioned, challenged, or disagreed with that reading of HB 2666. The subcommittee then moved HB 2666 to the full committee with a "do pass" recommendation without discussing the point. *Id.* at 68. The House committee on the Judiciary moved the motion to the floor with a "do pass" recommendation without further discussion. Minutes, House Committee on Judiciary, HB 2666, June 20, 1989, p 2.

After it was approved by the House Committee on Judiciary, HB 2666 was taken up by the Senate Committee on the Judiciary. Markee was the first witness to testify concerning the bill. He reiterated the statements that he had made before the House Committee on Judiciary, Civil Administration Subcommittee. *See* Tape Recording, Senate Committee on the Judiciary, HB 2666, June 27, 1989, Tape 50, Side A, at 326-29 ("HB 2666 * * * creates a sixty day continuing garnishment against *wages*. * * * It only applies to *wage* garnishments." (emphasis added)). Later in those proceedings, Ryder stated:

"The purpose for this bill is to reach non-exempt *wages* that are due to the debtor as of the date that the garnishee receives the writ of garnishment and those *non-exempt wages* that are going to become due in the next ensuing 60 days, during the life of the writ of garnishment, which is sixty days from the date of issuance. So the writ reaches both the * * * *non-exempt wages* that are due at the time the writ is served and those *wages* that will become due to the debtor * * * during the life of the writ which is sixty days from the date of its issuance. * * * What the intent is, is to reach the *non-exempt wages* that are due to the debtor at the time that the writ is served and during the sixty days that the writ's life continues on." Tape Recording, Senate Committee on the Judiciary, HB 2666, June 27, 1989, Tape 49, Side B, at 68-92 (emphasis added).

No member of the Senate Committee on the Judiciary questioned, challenged, or disagreed with that reading of HB 2666. The topic was not discussed further. HB 2666 was approved by the committee and sent to the floor with a "do pass" recommendation. Minutes, Senate Committee on the Judiciary, HB 2666, June 27, 1989, p 7.

The legislative history is clear. The proponents of HB 2666 intended for the writ of continuing garnishment to be available only with respect to an employee's earnings that are wages for personal services. That intent was voiced repeatedly by the bill's sponsors. No member of the legislature contradicted that stated intent or amended the bill to preclude or otherwise affect its application.

After our review of the text, context, and legislative history of ORS 29.401 to 29.415, we conclude that the legislature intended that the writ of continuing garnishment created by those statutes be available only with respect to an employee's wages for personal services. The contract between West and Zidell does not provide for compensation to an employee for personal services. Rather, under the contract between the parties, Zidell is obliged to pay West as an independent contractor pursuant to a "turnkey" purchase order that covers all labor *and* materials. Therefore, the money that Zidell owes to West (or to the Gayas if there is no West) is not subject to a continuing writ of garnishment as provided by ORS 29.401 to 29.415. Because the writ of continuing garnishment that Miller served on Zidell was ineffective as to that sort of contract payment, Miller did not become a lien creditor of either West or the Gayas.

The decision of the Court of Appeals and the judgment of the circuit court are affirmed.