Argued and submitted September 25, reversed November 13, 1996

# R. L. COATS,
*Respondent,*

*v.*

# STATE OF OREGON,
by and through its
Department of Transportation,
*Appellant.*

(94-01-10670L; CA A88581)

927 P2d 108

Stephanie L. Striffler, Assistant Attorney General, argued the cause for appellant. With her on the briefs were Theodore R. Kulongoski, Attorney General, and Virginia L. Linder, Solicitor General.

Max Merrill argued the cause for respondent. With him on the brief was Merrill, O'Sullivan, Macritchie, Petersen & Dixon.

Before Deits, Presiding Judge, and De Muniz and Haselton, Judges.

DE MUNIZ, J.

**DE MUNIZ, J.**

The Oregon Department of Transportation (ODOT) appeals from a judgment awarding plaintiff costs and attorney fees pursuant to ORS 279.435(5). We reverse.

Plaintiff Coats was the successful bidder on a project involving construction on Highway 20. Approximately 90 percent of the funding for the project was from federal funds and, as a condition of receipt of the funds, the state was required to provide assurance of compliance with Title VI of the Civil Rights Act of 1964, 42 USC § 2000d, for implementation of a program ensuring participation of minority and women-owned businesses (Disadvantaged Business Enterprises) in contracts involving federal transportation-related monies. As part of his bid, Coats agreed that eight percent of the total contract would be subcontracted to firms certified as Disadvantaged Business Enterprises. When a dispute arose between ODOT and Coats as to whether that provision was met, ODOT withheld payment of approximately $140,000, the value of the work the Disadvantaged Business Enterprise was to have performed.

Coats then filed this action for breach of contract. He alleged a right to the withheld payment and to interest "at the rate of one and one-half percent (1½ percent) from thirty (30) days after Defendant's receipt of invoice[,] ORS 279.435(2)[,] and reasonable attorney fees and costs pursuant to ORS 279.435(5)." The jury found in favor of Coats, and the court awarded attorney fees of $113,157.60.

ODOT challenges only the award of attorney fees and costs. ORS 279.435(5) provides:

> "Payment of interest may be postponed when payment on the principal is delayed because of disagreement between the public contracting agency and the contractor. Whenever a contractor brings formal administrative or judicial action to collect interest due under this section, the prevailing party shall be entitled to costs and reasonable attorney fees."

ODOT argues that ORS 279.435(5) does not authorize the award of fees here. That is a question of law. In interpreting

a statutory provision, our task is to ascertain the intent of the legislature, beginning with the text and context of the provision. If the legislature's intent remains unclear, we look to the legislative history. *PGE v. Bureau of Labor and Industries*, 317 Or 606, 610-11, 859 P2d 1143 (1993). We may rest on the "first level" of textual analysis only if the words will permit a single construction and all other possibilities are "wholly implausible." *Owens v. MVD*, 319 Or 259, 268, 875 P2d 463 (1994); *State v. Allison*, 143 Or App 241, 247, 923 P2d 1224 (1996). Both parties contend that the plain language of ORS 279.435(5) is clear. ODOT argues that an award of attorney fees may be made only if the claim is one for interest. It explains:

> "The attorney fee provision is part of a statute [ORS 279.435] regarding payment of progress payments on public improvement contracts. The statute provides for monthly payments as work progresses, based on estimates of work completed. If payments are not timely made, interest becomes due to the contractor commencing 30 days after receipt of the invoice from the contractor. ORS 279.435(2).[1] The interest accrues at a high rate designed to induce timely payment. The statute further provides that interest shall be paid automatically when payments become overdue, and that the public contracting agency 'shall not require the contractor to petition, invoice, bill or wait additional days' to receive the interest. ORS 279.435(3)."

In that context, ODOT argues that, "by its terms," subsection (5) applies only to situations when a contractor brings an action "to collect interest due." It argues that the first sentence of the subsection authorizes postponement of interest when payment on the principal is delayed because of disagreement, and that the statute would be expected to refer

---

[1] ORS 279.435(2) provides:

"Public contracting agencies shall make progress payments on the contract monthly as work progresses on a public contract for a public improvement. Payment shall be based upon estimates of work completed that are approved by the public contracting agency. A progress payment shall not be considered acceptance or approval of any work or waiver of any defects therein. The public contracting agency shall pay to the contractor interest at the rate of one and one-half percent per month on the progress payment, not including retainage, due the contractor. The interest shall commence 30 days after receipt of the invoice from the contractor or 15 days after the payment is approved by the agency, whichever is the earlier date."

to actions to collect "payments and interest" if the attorney fees provision in the second sentence were intended to apply to actions seeking the delayed payment, as well as interest. Instead, ODOT argues, the subsection is limited to actions to collect "interest due," and ORS 279.435(8) is the subsection that addresses disputes regarding the amount due for work performed. That subsection, ODOT notes, does not authorize an award of attorney fees.[2]

Coats responds:

"The language of the statute is quite clear. The State 'may' delay making payment when the State is in a dispute with the contractor over a withheld progress payment, but it does so at its own peril. If the State believes that, for some reason, the contractor is not entitled to the progress payment, it may choose to withhold that payment. However, if it takes that position and loses the underlying litigation, it must pay plaintiff its attorney fees."

Coats argues that that interpretation comes within the purpose of ORS 279.435, which is to ensure that "all payments due on a public contract for a public improvement and owed by a public contracting agency shall be paid promptly." ORS 279.435(1). He argues that, to accomplish that purpose, subsection (2) provides for the rate and method of computing interest on delayed payments, and subsection (3) requires that "[i]nterest shall be paid automatically when payments become overdue." Thus, he contends, the reference in subsection (5) to judicial actions to collect interest "due under this section" is to ORS 279.435 as a whole, not just to subsection (5). Coats contends that the language of subsection (5) addresses disputes over principal payments and also authorizes attorney fees, and, therefore, there is no doubt that the legislature intended that attorney fees can be awarded when an action is brought seeking *both* a progress payment and interest on that payment.

---

[2] ORS 279.435(8) provides, in part:

"(a) The public contracting agency shall pay, upon settlement or judgment in favor of the contractor regarding any dispute as to the compensation due a contractor for work performed under the terms of a public contract, the amount due plus interest at the rate of two times the federal discount interest rate[.]"

We conclude that the text of ORS 279.435(5) in its context is ambiguous. The language of subsection (5) authorizes attorney fees in an action "to collect interest" but that is interest "due under this section," not subsection. Neither party's interpretation of the statutory language is "wholly implausible." Accordingly, we turn to the legislative history to determine whether the legislature intended attorney fees to be awarded only when a claim is limited to the interest.

ORS 279.435(5) was adopted in 1991. Or Laws 1991, ch 516, § 1. The attorney fees language was proposed in amendments to HB 2688, a bill supported by the National Electrical Contractors Association (NECA) and Associated General Contractors (AGC) concerning prompt payment by public contracting agencies. House Committee on State and Federal Affairs, February 27, 1991; Ex. B, House Committee on State and Federal Affairs, May 2, 1991. Although then-current law provided for interest on late payments from public contracting agencies, contractors did not consider it effective. As John Gervais, representing the NECA explained:

> "We experience a lot of cases where the contracting agency sort of tells you where to go when you ask for the interest payments, and in this day and age, unless something is around fifty thousand dollars, it isn't worth it to get attorneys involved and litigate it. These interest payments are commonly pretty small, but * * * as you all know, in a contracting situation, the agency is working on the contractor's money and if they are late in being paid, they have to go to the bank and borrow the money, so they're paying interest on what they have to borrow to keep themselves going, and while they'd rather have the payment on time so that they can meet their obligations, at least the interest helps defer the burden that they've got to do when they have to finance the lateness of the payment." Tape Recording, House Committee on State and Federal Affairs, May 8, 1991, Tape 132A.

When the Senate Government Operations Committee considered the bill, Kim Mingo from AGC explained:

> "The fourth change is the allowance for attorneys fees and costs to a prevailing party in the event that there is legal or administrative action brought against the public contracting agency by a contractor because interest was not paid.

And that is in response to [the] statement that [Gervais] made that often times * * * right now [the] current statute requires that the public agency pay interest at 1.5% per month when the bill is 30 days overdue. Often times contractors will not get that interest because the public contracting agency will basically say, sue us if you want the money. As contractors, the interest portion may be small enough that it's not worthwhile for us to pursue that in court because we're not entitled to attorney fees and costs. This would allow prevailing parties their attorneys fees and costs." Tape Recording, Senate Government Operations Committee, June 5, 1991, Tape 108, Side A.

The explanations are from witnesses testifying to the legislative committees, and not from the legislators themselves. Nonetheless, there is nothing in the legislative history to the contrary. See *Zidell Marine Corp. v. West Painting, Inc.*, 322 Or 347, 359, 906 P2d 809 (1995). The legislative history shows that the bill was intended to provide for attorney fees when the claim was for interest. Considering the legislative intent, as well as the text and context, we conclude that the statute allows attorney fees only on claims for interest.

Reversed.