Argued and submitted February 21, affirmed June 20, 1990

## COLUMBIA-PACIFIC BUILDING & CONSTRUCTION TRADES COUNCIL, AFL-CIO, and International Brotherhood of Electrical Workers, Local 48, AFL-CIO, *Appellants,*

*v.*

## OREGON COMMISSION ON PUBLIC BROADCASTING, *Respondent,*

*and*

## STATE OF OREGON, *Appellant.*

(88-03-01354; CA A60471)

794 P2d 438

Norman D. Malbin, Portland, argued the cause for appellants Columbia-Pacific Building & Construction Trades Council, AFL-CIO and International Brotherhood of Electrical Workers, Local 48, AFL-CIO. With him on the briefs was David S. Paull, P.C., Portland.

John W. Osburn, Portland, argued the cause for appellant State of Oregon. With him on the briefs were Clifford N. Carlsen, Jr. and Miller, Nash, Wiener, Hager and Carlsen, Portland.

Jas Adams, Assistant Attorney General, Salem, argued the cause for respondent. With him on the brief were Dave Frohnmayer, Attorney General, and Virginia L. Linder, Solicitor General, Salem.

Before Buttler, Presiding Judge, and Warren and Rossman, Judges.

WARREN, J.

## WARREN, J.

The only issue in this case is whether defendant Oregon Commission on Public Broadcasting (OPB) "carried on" construction of a "public work," as defined in ORS 279.348(3) (since *amended by* Or Laws 1989, ch 752, § 1), when it contracted for a build-to-suit lease with Grayco Resources (Grayco). If it did, workers on the project were covered by Oregon's Little Davis-Bacon Act, ORS 279.348 through ORS 279.365, and were required to be paid the prevailing wage rate. ORS 279.350. The trial court held that the OPB did not "carry on" the construction of a "public work." We affirm.

Plaintiff labor organizations filed this action for a declaratory judgment and damages and named as defendants OPB and the state, acting through the Commissioner of the Bureau of Labor and Industries (BOLI), which is responsible for enforcing Oregon's prevailing wage law. ORS 279.355. If that law applied to the contract between OPB and Grayco and the contract did not require payment of the prevailing wage rate, then the contracting agency, OPB, would be liable for paying any unpaid wages. ORS 279.356(3).

OPB is the administering agency of both noncommercial educational television stations owned by the state and the state-owned television network. ORS 354.125. After OPB developed a five-year plan to build a new production facility, the legislature denied a 1983-85 budget request to begin planning and construction. OPB then explored the option of private support for the facility from the Oregon Public Broadcasting Foundation, Inc. (Foundation), which determined that it was not possible to raise enough private money to purchase a building in the immediate future; it then formulated a campaign to raise the funds to be able to purchase the facility after ten years of leasing.

OPB advertised for proposals from developers and selected six finalists,[1] requesting that they submit proposals based on OPB's performance specifications, including 80 percent office space and 20 percent television studio space. In August, 1986, OPB announced that Grayco's proposal had been selected. The total cost of the facility was expected to be

---

[1] Of the 38 responses submitted, only three were timely. OPB rejected all three and used an alternative negotiated means to select the finalists.

about $11 million, including $5 million in equipment and $6.2 million for construction. For the biennium beginning July 1, 1987, the legislature appropriated to OPB $1.5 million from the General Fund for "the acquisition of land and the planning, constructing, altering, repairing, furnishing and equipping of buildings and facilities." Or Laws 1987, ch 703, § 1. The legislature also appropriated $2.8 million "for [OPB's] production center." Or Laws 1987, ch 721, § 3. None of the money was used for the acquisition of land or for construction.

Grayco started construction on June 26, 1987, and signed the lease with OPB on July 18, after the appropriations bills were signed. Grayco was to build the facility on its own land in an area with a low office vacancy rate, and Grayco was to finance construction independently; OPB was to pay property taxes and to approve the final design and all design changes. The 20-year agreement granted OPB the option to purchase the facility at market value after five years and the right of first refusal to purchase. It also had an escape clause, allowing OPB to cancel the lease without penalty if funding sources were discontinued. If the building were to be sold or relet to another party as an office building, OPB had to pay any necessary cost of converting the studio space to offices.

The agreement also required Grayco to accept, at OPB's option, up to $2.5 million in loans from OPB at market interest rates, to be used to reduce Grayco's mortgage or other loan funds. No loan monies or rent payments were to give OPB any ownership interest in the facility or to affect the purchase price.[2] The lease did not require that Grayco pay the prevailing wage rate during construction.

After plaintiffs filed their complaint, BOLI admitted all allegations and filed a cross-complaint against OPB. All parties moved for summary judgment. The trial court granted summary judgment to OPB, finding that the building was not a "public work." It found that financing and construction decisions and control remained with Grayco and that the lease was for fair rental value with the option to purchase at full market value. It also found that OPB's escape clause left Grayco with all of the risk, that tenants other than OPB could

---

[2] The loan apparently allowed OPB indirectly to apply money to the project, but the purchase was not directly connected to the loan repayment.

potentially use the building and that the contract was not a subterfuge to avoid paying the prevailing wage.

■ ORS 279.352 requires that every contract for a "public work" contain a provision that workers who perform any part of the work contemplated by the contract will be paid the existing prevailing wage rate. ORS 279.348(3) provides:

> " 'Public works' includes, but is not limited to, roads, highways, buildings, structures and improvements of all types, the construction, reconstruction, major renovation or painting of which is carried on by any public agency to serve the interest of the general public."

OPB is a public agency. The issue is whether the construction required by the OPB-Grayco lease was to be "carried on by" OPB, making the facility a public work. No Oregon appellate court has ruled on whether building construction under build-to-suit leases is covered by ORS 279.348(3). Plaintiffs argue that the statute is remedial and should be construed broadly and that it applies when a state agency obtains a contractual commitment by a private party to construct a building for use by the agency. We conclude that the "carried on by" phrase is ambiguous as to whether it includes build-to-suit leases.

Plaintiffs and BOLI argue that the statute should be interpreted in the same manner as the federal Davis-Bacon Act, (Act), 40 USC § 276a *et seq,* which has been applied to build-to-suit leases. The Act requires that "[t]he advertised specifications for every contract in excess of $2,000 to which the United States or the District of Columbia is a party, for construction, alteration, and/or repair, including painting and decorating, of public buildings or public works" contain a provision stating the prevailing wage rate for mechanics and laborers. 40 USC § 276a (1988). The Act also requires that all contracts based on the advertised specifications require payment of the prevailing wage. 40 USC § 276a (1988). The term "public works" is defined in 29 CFR § 5.2(k) (1989):

> "'The term 'public building' or 'public work' includes building or work, the construction, prosecution, completion, or repair of which, as defined above, is carried on directly by authority of or with funds of a Federal agency to serve the interest of the general public regardless of whether title is in a Federal agency."

In *Military Housing, Ft. Drum,* WAB Case No. 85-16 (1985), the Wage Appeals Board (WAB) held that 20-year leases with options to purchase military housing to be constructed to Department of Defense specifications on non-federally-owned land were subject to the Act. To determine whether the housing was a "public work," WAB looked at whether the construction was "carried on directly by authority of or with the funds of a Federal agency * * *." It held that the construction was carried on directly by the Army and the Department of Defense, because the statutory scheme required thorough government specifications to be drawn and full public competition for contractor selection. Finally, WAB noted that private ownership and financing and the possibility that the public will only benefit for twenty years does not diminish the public nature of the buildings.

The following year, WAB reaffirmed its rationale in *Military Housing, Ft. Drum, supra,* and ruled that the Act applied to an outpatient clinic constructed for the Veterans Administration (VA) and leased for fifteen years with a five-year option to renew. *Outpatient Clinic, Crown Point, Indiana,* WAB No. 86-33 (1986). The opinion focused on two elements of the "public works" definition in 20 CFR § 5.2(k):

"(1)  Whether the project was 'carried on directly by authority of or with funds of a Federal agency * * *.'

"(2)  Does the project 'serve the interest of the general public regardless of whether title thereof is in a Federal agency.' " WAB No. 86-33 at 7.

WAB pointed out that the clinic was built under the direct authority of the VA, because no such undertaking was contemplated by a private developer before the VA's initiative, and no developer would have built such a specialized building without the assurance of the long-term lease. WAB also pointed out that 15 to 20 years of public benefit "serves the interests of the general public."

Plaintiff and BOLI argue that the 1983 amendments to ORS 279.348 were intended to bring Oregon's law closely in line with the federal law, so that federal interpretations apply to Oregon law as well. OPB argues that Oregon's definition of "public works" differs significantly from the federal definition, so that WAB decisions are not applicable. OPB also

points out that, when the 1983 bill was passed, it was not clear that the federal act covered build-to-suit leases.[3]

Although a federal public work is one "carried on directly by authority of or with funds of" a Federal agency, under ORS 279.348(3) an Oregon public work is one "carried on by" a public agency. In addition, although the federal regulation specifically includes projects as public works "regardless of whether title is in a Federal agency," the Oregon statute does not address the question of title. OPB argues that the Oregon definition is more narrowly drafted than the federal definition and applies only to construction of a building that is owned, financed and completely controlled by the agency.

Before the 1983 amendments, ORS 279.348(3) defined "public works" in circular fashion as "all public works."[4] In 1983, BOLI proposed Senate Bill 89, which contained a definition of a "contract for a public work" that included work on buildings owned *or leased* by a public entity. Before any hearings on the bill, BOLI asked that it be amended, stating that the bill would clarify the law and "more closely [align] the law with its parent statute, the Federal Davis-Bacon Act." Minutes, Senate Labor Committee, March 30, 1983, pp 2, 12. The amendments removed the definition of "contract for a public work" and added this language to the definition of "public work":

> "[That] which is carried on by *authority of or with funds of* any public agency to serve the interest of the general public." SB 89 A-Engrossed. (Emphasis supplied).

During hearings, the bill was again amended, deleting the phrase "by authority of or with funds of," after concerns were expressed that it might be interpreted to cover financial

---

[3] In a 1961 letter opinion, the Comptroller General said that the Act did not apply to leases and lease-options in the absence of a clear legislative directive and where "there is no firm undertaking on the Government's part to acquire more than a leasehold interest in the property." Comp Gen 46, 49 (1961).

[4] *Former* ORS 279.348(3) provided:

" 'Public works' includes, when the contract price exceeds $2,000, all public works of the state or of any county, city, district, authority, public corporations or entity and any of their instrumentalities organized and existing under law or charter."

assistance programs of the Economic Development Department, the Housing Division and other state agencies. Minutes, House Labor Committee, June 24, 1983, Exhibit G. BOLI agreed to the amendment, stating that there was never an intent to expand coverage, and the bill was passed. Minutes, House Labor Committee, July 1, 1983, p 2. There was no discussion of whether it covered construction under build-to-suit leases.

■     Although BOLI proposed the 1983 bill with the intention of bringing the Oregon definition of "public work" in line with the federal definition, the final version was different from the version submitted by BOLI and significantly different from the federal version, leaving out the two important phrases relied on in *Outpatient Clinic, Crown Point, Indiana, supra,* to determine coverage of a build-to-suit lease. For that reason, and because federal authority at the time of passage did not clearly interpret the Act to cover build-to-suit leases, we construe the Oregon statute more narrowly.

■     To determine whether a state agency "carried on" construction, we look at a number of factors, the most important of which is who exercised the most control over the project. Although OPB initiated the project and selected Grayco to construct a building according to its studio specifications and subject to its approval of design changes, the building is in major part a general office building. The studio space is convertible for use by other lessees, if OPB does not purchase the building or terminates the lease early. Although OPB paid property taxes and Grayco was required to accept a $1.5 million loan at OPB's option, the loan was at market rate and was fully repayable under any circumstances. It did not give OPB a reduced purchase price or other rights in the building. Grayco already owned the land on which the facility was built, was entirely responsible for financing the project and started construction before the lease with OPB was signed. Although OPB had the right to buy the building, there was also an escape clause from the lease if OPB lost its source of funding in any biennium. OPB's only cost for not purchasing the building would be the conversion of the 20 percent studio space to office space, a cost that certainly gives OPB an incentive to buy and to avoid termination of the lease, but did not give it any more control over the project.

In summary, although OPB desired to construct its own building, it was unable to do so. The agreement allowed Grayco to build what was primarily an easily-rented office building on its own land. OPB's long-term commitment was limited by its ability to cancel the lease each biennium. OPB's right to loan money brought with it no additional rights in the project. Not all leases that include major construction or reconfiguration require payment of the prevailing wage rate. We hold that *former* ORS 279.348(3) did not require that the prevailing wage rate be paid for construction required by the OPB-Grayco contract.

Affirmed.