Argued and submitted April 20, judgment affirmed; supplemental judgment reversed as to attorney fees and enhanced prevailing party fee; otherwise affirmed September 30, 2009

STATE OF OREGON,
acting by and through Dan Gardner,
in his capacity as Commissioner of the
Oregon Bureau of Labor and Industries,
*Plaintiff-Appellant,*

*v.*

CITY OF SALEM;
The Salem Group LLC;
Rushforth Construction, Inc.;
Webb Industries, Inc.,
dba Smith Sheet Metal;
Commercial Erectors Co., Inc.;
Dalke Construction Co., Inc.;
Davies, Inc.,
dba Dallas Glass,
dba Dallas Glass and Window;
Delta Drywall, Inc.;
Tapani Plumbing, Inc.;
ENT Electric, Inc.;
Anning-Johnson Company;
FlexForce, Inc.;
Gun-Crete Cement Company,
dba Cascade Pools;
Gypsum Technologies, Inc.;
Jet Heating, Inc.;
Labor Ready Northwest, Inc.;
Modernfold Northwest, Inc.,
dba Interior Technology;
Norkote, Inc., fka Northwest Fireproofing, Inc.;
Paragon Tile And Stone, Inc.;
Peter Potma,
dba Amtop Enterprises;
and Tahoma Painting, Inc.,
*Defendants,*

*and*

URBAN RENEWAL AGENCY OF THE CITY OF SALEM,
*Defendant-Respondent.*

Marion County Circuit Court
05C18435; A135218
219 P3d 32

Denise G. Fjordbeck, Assistant Attorney General, argued the cause for appellant. On the briefs were Hardy Myers, Attorney General, Mary H. Williams, Solicitor General, and Richard D. Wasserman, Attorney-in-Charge.

William F. Gary argued the cause for respondent. With him on the brief were Sharon A. Rudnick, Jillian R. Bruce, Sivhwa Go, and Harrang Long Gary Rudnick P.C.

Before Edmonds, Presiding Judge, and Wollheim, Judge, and Schuman, Judge.

EDMONDS, P. J.

## EDMONDS, P. J.

The Commissioner of the Bureau of Labor and Industries (BOLI) filed this action against the Urban Renewal Agency of the City of Salem (Urban Renewal) and others, alleging that workers who performed construction on a hotel were not paid prevailing wages under Oregon's Prevailing Wage Rate Law, *former* ORS 279.348 to 279.380.[1] After the parties filed cross-motions for summary judgment, the trial court concluded that the hotel was not a "public work" within the meaning of the Prevailing Wage Rate Law and entered judgment in favor of Urban Renewal. Subsequently, Urban Renewal filed a petition for attorney fees, a prevailing party fee, and an enhanced prevailing party fee, and the court awarded those fees on the ground that BOLI had prosecuted the action without a reasonable basis in fact and law. BOLI appeals the underlying judgment and the supplemental judgment for attorney fees. We affirm the grant of summary judgment against BOLI but reverse the award of attorney fees and the enhanced prevailing party fee.

The parties agree that the material facts are undisputed. The City of Salem had, for some time, been considering the feasibility of building a conference center near a hotel. In 2000, VIP's Motor Inns, Inc. (VIP's) purchased a lot that was occupied by a vacant Ramada Inn in downtown Salem— a site that the city had not previously considered. VIP's representatives then approached Urban Renewal about the possibility of a coordinated public-private development of a conference center and hotel on the VIP's property. Urban Renewal commissioned a feasibility study on the VIP's property and concluded that it was an ideal location for a conference center, partly because of the cost-saving opportunities that an adjacent hotel would provide with regard to construction and operation of the conference center. Following the study, Urban Renewal began formal negotiations with VIP's.

---

[1] *Former* ORS 279.348 to 279.380 were repealed as of March 1, 2005, by Oregon Laws 2003, chapter 794, section 332, and new versions of the statutes were reenacted and later codified at ORS 279C.800 to 279C.870. We refer throughout this opinion to the versions of the statutes in effect between 2003 and March 1, 2005.

Those negotiations culminated in a series of related transactions for the coordinated development and construction of a publicly financed conference center and parking garage and a privately financed hotel on the VIP's site. The first of those transactions occurred in January 2003, when Urban Renewal purchased a one-half interest in the VIP's property for $1.5 million. At the same time, VIP's sold its remaining half-interest in the property to The Salem Group, LLC (Salem Group), a limited liability company created by VIP's to develop the hotel property. The property was then reconfigured through a lot line adjustment, such that Urban Renewal would own the land beneath the conference center and the Salem Group would own the land beneath the hotel.

In July 2003, Urban Renewal entered into a number of agreements with the Salem Group and others concerning the joint undertaking. The upshot of those agreements was that Urban Renewal would construct and own the conference center and parking garage, and the Salem Group would construct and own the hotel (to be called the Phoenix Grand Hotel). Urban Renewal and the Salem Group each hired the same developer, Winston Development Company, and the same general contractor, Rushforth Construction Co., Inc. (Rushforth), but contracted separately for the construction of their respective parts of the joint development. Under the agreements, Urban Renewal was not a party to the hotel construction contract between Rushforth and the Salem Group and, likewise, the Salem Group was not a party to the construction contract for the conference center and parking garage between Rushforth and Urban Renewal.

Although the construction contracts were separate, the various components of the undertaking—conference center, parking garage, and hotel—were designed jointly to share certain commonalities. For example, Urban Renewal's parking garage is located beneath the conference center *and* the hotel—that is, partially on land owned by the Salem Group. Urban Renewal financed the construction of the parking garage and, in exchange for an easement that allowed the garage to be constructed partially on the Salem Group's property, Urban Renewal granted the Salem Group an easement to use a certain number of the garage spaces for hotel customer parking.

Similarly, the conference center and hotel share some common walls on the first and second floors, as well as the kitchen and restaurant portion of the hotel. The kitchen and restaurant, part of an area commonly referred to by the parties as the "back of the house," were the subject of yet another series of agreements. Urban Renewal and the Salem Group entered into a "build to suit" lease for the back of the house, under which Urban Renewal would lease certain specified areas within the hotel. Those leased areas included a restaurant space, emergency exit areas and a stairway, a loading dock receiving area, administrative offices, a catering kitchen, certain storage areas, a mechanical room, and an employee locker room. Urban Renewal, in turn, sublet a portion of the restaurant to the Salem Group—an arrangement that allows both parties to satisfy restaurant/kitchen needs without duplicating those facilities in the hotel and conference center. As the lessee, Urban Renewal agreed to pay the cost of the improvements.

According to the record, one of the reasons the parties entered into separate contracts for (1) the construction of the conference center and parking garage, (2) the hotel construction, and (3) the leasehold improvements was to allow the parties to pay construction workers different wages based on the work they were performing. The conference center and parking garage were funded, in part, by a $7.2 million loan guarantee from the United States Department of Housing and Urban Development (HUD). As part of the application for federal funding, the City of Salem sought a determination whether the Davis-Bacon Act, 40 USC §§ 3141 to 3148 (*formerly* 40 USC §§ 276a to 276a-5), required the payment of prevailing wages for the joint conference center and hotel project. HUD issued a determination that the Davis-Bacon Act required the payment of prevailing wages for construction of the conference center and parking garage, and for all site demolition, but that the act did not require payment of prevailing wages on the hotel and leasehold improvements.

Pursuant to HUD's determination, prevailing wages were paid for all work performed on the conference center and parking garage. And, even though HUD had determined that the Davis-Bacon Act did not require payment of federal prevailing wages on the leasehold improvements to the hotel,

Urban Renewal determined that Oregon prevailing wages should nevertheless be paid for work performed on those leasehold improvements because they were financed with public funds. As a result, Urban Renewal directed the Salem Group to require Rushforth to pay prevailing wages on all leasehold improvements to the hotel.

The workers on the hotel construction itself, however, were not paid either federal or state prevailing wages, and that arrangement led to this action. Before construction was completed, BOLI received a complaint that prevailing wages were not being paid for work performed on the hotel construction. In March 2004, BOLI contacted Urban Renewal and asserted that state prevailing wages were owed on the construction of the hotel pursuant to ORS 279.348 to 279.380, which require the payment of prevailing wages on all "public works." BOLI subsequently filed a complaint in circuit court to recover those prevailing wages and obtain injunctive relief against Urban Renewal, the Salem Group, Rushforth, various subcontractors, and the City of Salem.

Agreeing that the material facts were undisputed, BOLI and Urban Renewal both moved for summary judgment in the circuit court on the question of whether the hotel was a "public work." BOLI offered three arguments to the trial court in support of its position that prevailing wages were owed on the hotel construction: First, BOLI contended that the hotel and conference center were a single "public works" undertaking. Second, BOLI asserted that, to the extent that the hotel and conference center were divided into two projects, the division "was improper under ORS 279.357(2) and should be ignored."[2] Third, BOLI argued that, "irrespective of its relationship to the conference center, the hotel itself was a 'public works' subject to Oregon's [prevailing wage rate] requirements."

In response, and in support of its own motion for summary judgment, Urban Renewal contended that the hotel was not a "public work" at all, but was instead a privately constructed and owned building. Urban Renewal

---

[2] ORS 279.357(2)(a) provided that "[a] public agency may not divide a public works project into more than one contract for the purpose of avoiding compliance with ORS 279.348 to 279.380."

acknowledged that the hotel was built in coordination with the construction of the conference center and parking garage, but contended that the projects nonetheless were entirely separate. Urban Renewal pointed out that profits and losses of the hotel were borne entirely by private owners; that the hotel is responsible for all taxes levied; that the Salem Group did not agree to make any of the hotel rooms available to the conference center, nor did Urban Renewal commit to rent rooms in the hotel; and that Urban Renewal does not have an option or right of first refusal to purchase the hotel, should the Salem Group decide to sell it.

The trial court, in a carefully reasoned opinion, agreed with Urban Renewal's arguments. The court ruled that the construction of the hotel was not "carried on" or "contracted for" by a public agency, as required for a "public work" under ORS 279.348(3); that the primary purpose of the hotel was not to "serve the public interest" under ORS 279.348(3); and that no funds of a public agency were used directly or indirectly in the construction of the hotel. The court also rejected BOLI's contention that Urban Renewal divided a single public work into multiple contracts for the purpose of avoiding compliance with the prevailing wage laws. In that regard, the trial court explained that "[t]he parties' efforts to keep their roles and their finances well-defined and delineated reflect a prudent steward of the public's funds who was committed to its obligations under state and federal law to pay prevailing wage rates, and an equally prudent private business entity." Accordingly, the court granted Urban Renewal's motion and entered judgment against BOLI.

Urban Renewal subsequently petitioned the trial court for an award of attorney fees, as well as a prevailing party fee and an enhanced prevailing party fee. In its petition, Urban Renewal contended that BOLI had filed its complaint without a reasonable basis in fact or law, and that Urban Renewal was therefore entitled to its attorney fees under ORS 182.090. That statute provides that,

"[i]n any civil judicial proceeding involving as adverse parties a state agency, as defined in ORS 291.002, and a petitioner, the court shall award the petitioner reasonable attorney fees and reasonable expenses if the court finds in

favor of the petitioner and also finds that the state agency acted without a reasonable basis in fact or in law."

ORS 182.090(1). The trial court agreed with Urban Renewal that "BOLI's actions in bringing this suit against [Urban Renewal] and the other defendants, and BOLI's clearly erroneous interpretation of the state Prevailing Wage Law in contravention of well-settled case law and its own administrative rule, had no reasonable basis in law or fact[.]" Accordingly, the court awarded Urban Renewal its attorney fees, a prevailing party fee, and an enhanced prevailing party fee in a supplemental judgment.

BOLI appeals both the underlying judgment and the supplemental judgment for fees. With respect to the trial court's grant of summary judgment, BOLI essentially makes two alternative contentions. First, BOLI argues that the trial court erred in concluding that, for purposes of the Prevailing Wage Rate Law, the hotel was a separate "building" from the conference center; according to BOLI, the hotel and conference center were part of a single, integrated project and, therefore, the hotel was part of a larger "public work." Second, BOLI submits that, even assuming that the hotel and conference center should be considered separate buildings, the trial court erred in concluding that Urban Renewal did not "contract for" the construction of the hotel and in concluding that no public funds were used to construct the hotel. *See* ORS 279.357(1)(c) (exempting from the reach of the Prevailing Wage Rate Law those "[p]rojects for which no funds of a public agency are directly or indirectly used").[3]

Oregon's Prevailing Wage Rate Law requires that the "hourly rate of wage to be paid by any contractor or subcontractor to workers upon all public works shall be not less than the prevailing rate of wage for an hour's work in the same trade or occupation in the locality where such labor is performed." ORS 279.350(1). For purposes of that statute, the term "public works" is defined as follows:

" 'Public works' includes, but is not limited to, roads, highways, buildings, structures and improvements of all

---

[3] On appeal, BOLI appears to have abandoned its argument that the division of the project into separate contracts violated ORS 279.357(2).

types, the construction, reconstruction, major renovation or painting of which is carried on or contracted for by any public agency to serve the public interest but does not include the reconstruction or renovation of privately owned property which is leased by a public agency."

ORS 279.348(3).

BOLI contends that, "[b]y virtually any measure, the hotel and conference center are a single 'building.' " For that reason, according to BOLI, the hotel and conference center are part of a single "public work" for purposes of ORS 279.348(3). Thus, the question before us is whether, viewing the facts in the light most favorable to BOLI, there exists a genuine issue of material fact as to whether the hotel and conference center are a single building (*i.e.*, a single public work) or separate buildings—one private and one public. ORCP 47 C; *Oregon Steel Mills, Inc. v. Coopers & Lybrand, LLP*, 336 Or 329, 332, 83 P3d 322 (2004) (stating standard of review of the trial court's grant of summary judgment).

The word "building" is not defined for purposes of ORS 279.348(3), but it is a word of common meaning. The relevant definition of the term "building" in this context is

"a constructed edifice designed to stand more or less permanently, covering a space of land, usu. covered by a roof and more or less completely enclosed by walls, and serving as a dwelling, storehouse, factory, shelter for animals, or other useful structure—distinguished from structures not designed for occupancy (as fences or monuments) and from structures not intended for use in one place (as boats or trailers) even though subject to occupancy[.]"

*Webster's Third New Int'l Dictionary* 292 (unabridged ed 2002).

In support of its argument that the hotel and conference center comprise a single "building," BOLI points to the facts that the hotel and conference center "share walls, a foundation, and structural components"; they share fire alarm systems, seismic joints, certain electrical components, and a stairwell; and, they were built on what was originally a single lot, were built at the same time, and were developed as a single, integrated project.

In response, Urban Renewal correctly points out that BOLI's argument never engages with certain critical and undisputed facts. The hotel and conference center were separately designed, separately owned, separately financed, built under separate construction contracts,[4] and serve separate uses. The conference center and hotel have distinct physical characteristics: the height and exterior architectural features are different; the interior finishes are different; and the buildings have separate entrances with access on different streets.

■ We conclude that the mere fact that two separately owned buildings, which were designed to complement one another and to eliminate redundancies, happen to share certain components, does not automatically convert them into a single building or public work under the common meaning of those terms as used in ORS 279.348(3). Any number of "buildings" could be erected on a single parcel of land by different owners, as the term "building" is commonly understood. From the undisputed facts in the record, no reasonable trier of fact could find that the two independently owned and financed buildings—one a conference center owned by a public agency and one a hotel owned by a private developer—comprised a single "building" for purposes of the Prevailing Wage Rate Law.[5]

■ We turn, then, to BOLI's alternative argument that the hotel itself was a public work because Urban Renewal "contracted for" the construction of the hotel for a public purpose. According to BOLI, Urban Renewal "contracted for" the construction of the hotel when it entered into a development agreement with the Salem Group that required the Salem

---

[4] Although BOLI contended below that the separate contracts were for the purpose of avoiding compliance with ORS 279.357(2), that argument was rejected by the trial court and BOLI does not raise it on appeal.

[5] If we were to conclude that the hotel and conference center were a single building and therefore a single project for purposes of the Prevailing Wage Rate Law, BOLI runs into another hurdle. ORS 279.357(1)(b) provided that the prevailing wage statutes do not apply to "[p]rojects regulated under the Davis-Bacon Act (40 U.S.C. 276a)." In this case, HUD made a determination that the workers on the conference center were required to be paid prevailing wages under the Davis-Bacon Act but that workers on the hotel were not. The trial court did not reach the applicability of ORS 279.357(1)(b) because it concluded that the hotel was not a "public work." We need not reach that issue either.

Group to build the hotel. The crux of BOLI's contention is that a public agency "contracts for" the construction of a building when a contract between the agency and another entity requires that other entity to construct, or arrange for the construction of, the building. The short answer to BOLI's argument is that we have previously rejected that construction of ORS 279.348(3). *Portland Development Comm. v. BOLI*, 216 Or App 72, 171 P3d 1012 (2007). However, because it pertains to our discussion of the attorney fee issue later in this opinion, we discuss that decision in more detail.

In *Portland Development Comm.*, we addressed whether the Portland Development Commission (PDC) had "contracted for" the construction of a building on land that the PDC sold to a developer. BOLI took the same position that it now takes in this appeal:

> "BOLI argues that, in employing the term 'contracted for,' the legislature intended to encompass any circumstance in which 'a contract between a public agency and another entity requires that entity to construct, or arrange for the construction of, the building or other improvement.' Thus, BOLI reasons, the Prevailing Wage Rate Law applies, because PDC's ultimate goal in entering into the [development agreement] was to have a building constructed at the [site]."

216 Or App at 79.

After tracing the historical evolution of ORS 279.348(3) and the legislative history of the amendment that added the "contracted for" language, we rejected BOLI's contention. We explained that, before that language was added to the statute, the definition of "public works" included only projects that were "carried on" by a public agency. On balance, we found PDC's interpretation of that language more plausible based on the statute's text and context—namely, that the legislature intended to cover those circumstances that are analogous to when a public agency "carried on" construction but where the agency instead contracted with a third party to perform the task on the agency's behalf. *Id.* at 80. However, BOLI's interpretation—that an agency "contracts for" construction of a building "so long as the ultimate goal of the agency's contract is to produce a building, even if

the agency does not itself own or later use the building"—was not wholly implausible, so we proceeded to examine the statute's legislative history. *Id.* at 79, 80.

The legislative history of the amendment that added the "contracted for" language confirmed PDC's interpretation of the statute. That history demonstrated that the "contracted for" language was added to avoid the circumstances that we addressed in *Columbia-Pacific v. OPB*, 102 Or App 212, 794 P2d 438 (1990). In *Columbia-Pacific*, a public agency (OPB) developed plans to build a new production facility but later determined that it could not immediately fund construction. OPB then entered into an agreement by which a developer agreed to build the new facility to OPB's specifications and agreed to lease the facility to OPB for up to 20 years, with an option to purchase after five years. The developer did not pay prevailing wages for the work performed. The trial court granted summary judgment to OPB, concluding that OPB had not "carried on" the construction under the version of the statute then in effect.

It was against that backdrop (and while the appeal in *Columbia-Pacific* was pending in this court), that the legislature added the "contracted for" language. Testimony from the legislative committee that considered the amendment demonstrated that "various legislators raised questions as to whether, under that amendment, the prevailing wage rate statute would apply when a public agency rented only part of the building or leased space for only a very limited period of time." *Portland Development Comm.*, 216 Or App at 82. We noted that "[t]here is no suggestion that the 'contracted for' language was intended to encompass situations like that here, where the public agency was not a party to the construction contract, did not own the property at the time the work was undertaken, and made no subsequent use of the property." *Id.*

Our analysis of the legislative history of the "contracted for" language in *Portland Development Comm.* concluded by quoting Senator Shoemaker, who carried the bill on the Senate floor:

" 'When a public agency contracts for the construction of a building, the spending power of the government is at work

regardless of the form of the agreement. Ownership is not the critical issue. The issue is whether a project owes its existence to the financial commitment of a public agency. *That commitment may be in the form of a promise to purchase or a promise to lease, either way construction undertaken on the basis of such a commitment is precisely the circumstance in which the prevailing wage rate law is meant to apply.'* "

*Id.*, *quoting* Tape Recording, Senate Floor Debate, HB 2609, June 15, 1989, Tape 181, Side B (statement of Sen Robert Shoemaker) (emphasis in *Portland Development Comm.*).

Based on that history and the text and context of ORS 279.348(3), we held:

"[W]here, as here, a public agency merely sells land to a private entity to develop for its own private purpose, without continued participation akin to that presented in the OPB case, the agency has not 'contracted for' the construction, even if the agency retains some control over the type or style of the development to ensure that the development is compatible with the agency's objectives."

216 Or App at 83.

In our view, *Portland Development Comm.* defeats BOLI's argument that Urban Renewal "contracted for" the construction of the hotel. BOLI does not contend—and cannot contend on these facts—that Urban Renewal "carried on" the construction of the hotel itself.[6] It is undisputed that the Salem Group, not Urban Renewal, financed and controlled the project; thus, the Salem Group, not Urban Renewal, "carried on" the construction of the hotel. *See Columbia-Pacific,* 102 Or App at 219 ("To determine whether a state agency 'carried on' construction, we look at a number of factors, *the most important of which is who exercised the most control over the project.*" (Emphasis added.)). And, on this record, no reasonable trier of fact could conclude that Urban Renewal "contracted for" the Salem Group to "carry on" that construction for a state agency. The Salem Group, as owner and operator of the hotel, carried on the construction, and it did so on

---

[6] BOLI does contend that Urban Renewal "carried on" the combined conference center and hotel; however, we have rejected BOLI's contention that the two buildings should be considered together as one.

its *own* behalf. The fact that Urban Renewal ultimately leased a portion of the hotel is not enough to distinguish this case from *Portland Development Comm.*, 216 Or App at 82 (concluding that the legislative history did not support the view that the legislature intended the "contracted for" language to extend to situations where a public agency "rented only part of the building or leased space for only a very limited period of time").

In sum, the undisputed facts demonstrate that the hotel was a separate project from the conference center and parking garage for purposes of the Prevailing Wage Rate Law. The undisputed facts further demonstrate that Urban Renewal did not "contract for" the construction of the hotel, and for that reason, the hotel was not a "public work" within the meaning of the Prevailing Wage Rate Law. The trial court correctly granted summary judgment in favor of Urban Renewal.

■ We turn, then, to BOLI's supplemental assignment of error concerning the trial court's award of attorney fees and an enhanced prevailing party fee. As previously noted, the trial court agreed with Urban Renewal's contention that BOLI had filed the action without a reasonable basis in fact or law. For that reason, the trial court concluded that Urban Renewal was entitled to its attorney fees pursuant to ORS 182.090(1), which provides:

> "In any civil judicial proceeding involving as adverse parties a state agency, as defined in ORS 291.002, and a petitioner, the court shall award the petitioner reasonable attorney fees and reasonable expenses *if the court finds in favor of the petitioner and also finds that the state agency acted without a reasonable basis in fact or in law*."

*Id.* (emphasis added). The court also awarded an enhanced prevailing party fee to Urban Renewal pursuant to ORS 20.190(3).

BOLI initially contends that ORS 182.090 does not provide a basis for awarding attorney fees to Urban Renewal because Urban Renewal—the defendant below—was not a "petitioner" within the meaning of ORS 182.090. We need not reach that issue, however, because we conclude that, even assuming that Urban Renewal is a "petitioner" within the

meaning of that statute, BOLI did not bring this action without a reasonable basis in fact or law.

In particular, BOLI's theory that the hotel itself was a public work, the construction of which was "contracted for" by Urban Renewal—albeit incorrect—was not devoid of factual and legal support. In *Portland Development Comm.*, we grappled with the meaning of the term "contracted for," and ultimately concluded that it was not as broad as BOLI contended in that case. Nonetheless, we were required to resort to legislative history to reach that conclusion, and the issue required significant legal analysis. At the time that BOLI filed this case (before our decision in *Portland Development Comm.*), the meaning of the term "contracted for" had not been adjudicated in a published appellate decision. Moreover, the facts in this case—in which Urban Renewal leased and operated part of the hotel, jointly developed the hotel with a publicly financed conference center, and shared the same contractor and developer with the Salem Group—make this a closer case than *Portland Development Comm.*, a case in which the PDC had no involvement in the supervision or performance of the construction at issue.

■ We likewise disagree with the trial court's determination that BOLI had no reasonable factual or legal basis to conclude that the hotel was contracted for "to serve the public interest." ORS 279.348(3). We are not prepared to hold that BOLI's position had no reasonable factual or legal basis, particularly in light of the fact that the hotel and conference center were always designed as part of a single, integrated development. If BOLI's predicate were correct that Urban Renewal "contracted for" the construction of the hotel, it would not be unreasonable, either as a matter of fact or law, to further assert that the primary purpose of that contract was to serve the public interest.[7]

---

[7] Likewise, BOLI's contention that public funds were at least "indirectly" used for the construction of the hotel had a reasonable factual and legal basis, in light of its incorrect—but reasonable—predicate that Urban Renewal had "contracted for" the construction of the hotel. *See* ORS 279.357(1)(c) (exempting from the reach of the Prevailing Wage Rate Law those "[p]rojects for which no funds of a public agency are directly or indirectly used").

Thus, we conclude that the trial court erred in awarding attorney fees and an enhanced prevailing party fee on the ground that BOLI filed the action without a reasonable basis in fact or law. Accordingly, we reverse the supplemental judgment in those respects.

Judgment affirmed. Supplemental judgment reversed as to attorney fees and enhanced prevailing party fee; otherwise affirmed.